SANTIAGO HERRERA, Plaintiff-Appellee and Cross-Appellant, *v.* BENE-FIT TRUST LIFE INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.

First District (5th Division)   No. 83—1353

Opinion filed June 29, 1984.

Victor J. Piekarski and Michael Resis, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellant.

Raymond P. Concannon of Raymond P. Concannon, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Plaintiff filed suit seeking total disability benefits pursuant to a Group Insurance Policy (the Policy) issued by defendant to plaintiff's employer together with a claim for attorney fees, costs and punitive damages pursuant to section 155 of the Illinois Insurance Code (the Code) (Ill. Rev. Stat. 1983, ch. 73, par. 767). The trial court found that the determinative provision of the Policy was ambiguous and, accordingly, granted plaintiff's motion for summary judgment as to defendant's liability and denied defendant's cross-motion for summary judgment. Following subsequent arguments on the section 155 allegations, the trial court denied plaintiff's request for attorney fees and punitive damages.

On appeal, defendant contends that the determinative provision of the Policy which treats periods of disability separated by less than six months of uninterrupted active employment as "continuous" unless such periods arise from "different and unrelated causes" is not ambiguous and should be construed as denying plaintiff additional benefits for an aggravation of a pre-existing condition for which plaintiff had already received maximum benefits. In his cross-appeal, plaintiff contends that the trial court abused its discretion in failing to award attorney fees and punitive damages based upon defendant's unreasonable and vexatious behavior. For the following reasons, we affirm the judgment of the trial court.

The undisputed facts disclose that on or about October 24, 1977, plaintiff, a machinist for the Chicago and Northwestern Railway, sustained injuries to his spine and legs while throwing brake shoes across a pit during the course of his employment. In late January, 1978, plaintiff consulted his personal physician, Dr. Kanter, regarding these injuries and was diagnosed as having a "herniated lumbar disc, L5-S1, left" and was advised not to return to work until he had fully recovered. As a result, plaintiff filed a claim with defendant under the monthly accident benefit provision of the Policy which provides benefits of $150 per month for the first six months of disability, $250 for the second six months, and $150 for the remainder of the disability or until age 65. Subsequently, plaintiff was advised by defendant that because his disability had not arisen within 20 days of the accident, he was limited to those accident disability benefits provided under the delayed total disability provision of the Policy which pays benefits of one-half the monthly accident benefit for a maximum of three months, totalling $225. However, plaintiff did have the option to submit his claim under the monthly sickness benefit provision, which would en-

able him to receive monthly benefits of $150 for the first six months and $250 for the second six months, totalling $2,400. Plaintiff elected to file his claim under the latter provision and received full payment of the sickness benefits.

In May 1978, Dr. Kanter determined that plaintiff was sufficiently recovered to return to work as a diesel mechanic on a light-duty basis, provided that he did not lift anything weighing in excess of 40 pounds until July 9, 1978, at which time he would be reexamined. Because restricted work was not available, plaintiff did not actually return to work until July 11, 1978, when all lifting restrictions had been removed.

After returning to work, plaintiff, on July 21, 1978, sustained injuries to his spine and legs while lifting a sledge hammer during the course of employment. The accident rendered him totally disabled. Within 20 days of this second accident, plaintiff filed a claim with defendant under the monthly accident benefit provision of the Policy, seeking benefits of $1800 per year for 20 years, totalling $36,000.[1]

Relying on the "Exceptions and Reductions" provision (Exceptions Provision) of the Policy, defendant refused to pay plaintiff additional benefits for what defendant claimed was a period of total disability arising from the same cause as the first such period; i.e., injuries to the back and legs. The Exceptions Provision provides, in pertinent part:

> "[I]ntermittent periods of total disability separated by less than six months of continuous active employment shall be considered as one continuous period of disability unless they arise from different and unrelated causes."

As a result, plaintiff filed suit seeking $36,000 in liquidated damages plus costs and attorney fees, claiming that defendant's refusal to pay was vexatious and without reasonable cause. In its answer, defendant reasserted its contention that the injury sustained by plaintiff on July 21, 1978, was an aggravation of a pre-existing condition for which plaintiff had already received maximum benefits and cited the Exceptions Provision as the basis for its affirmative defense.

Plaintiff then moved for summary judgment as to defendant's liability under the Policy and attached a copy of the executed insurance policy, his own affidavit attesting to his total disability and a sworn

---

[1]Pursuant to the monthly accident benefit provision, plaintiff is eligible to receive $2,400 for the first year of total disability and $1,800 for every year thereafter until age 65. Plaintiff, age 45, apparently overlooked the fact that he was entitled to increased benefits during the first year and, instead, sought $1,800 per year for 20 years, at which time he would be 65 years old.

letter from Dr. Kanter also attesting to plaintiff's total disability. In response, defendant filed its reply followed by a cross-motion for summary judgment which was predicated upon defendant's contention that plaintiff's second period of disability did not arise from a cause different and unrelated to that which precipitated the first period for which benefits had been paid. In support of its motion, defendant attached, *inter alia*: (1) an affidavit from Dr. Kanter stating that plaintiff's second period of disability was caused by a recurrence of the injury that rendered him disabled from January 25, 1978, through July 1978; and (2) an affidavit from William E. Blohm, Jr., an employee of defendant, attesting to the fact that plaintiff had been paid the full amount in benefits for his original injury.

Following extensive arguments on the summary judgment motions, the trial court denied defendant's motion for summary judgment and granted plaintiff's motion for summary judgment solely on the issue of liability, stating:

> "[T]here is at the very least ambiguity in the contract as to what is meant by causes, different and unrelated causes which means, in other words, that the factors bringing about the disability not be the same as the factor that brought about the first disability, ***.

> * * *

> I'm going to grant the summary judgment in favor of the Plaintiff on the basis that there is ambiguity in this agreement, and if there is ambiguity, the word "cause" should be deemed to relate to causes involving the external factors precipitating the disability regardless of any similarity in the pathology with the pre-existing pathology, so the motion of the Plaintiff will be granted."

In a later order, entered January 27, 1983, the trial court denied plaintiff's motions for judgment in the amount of $35,020 and for accelerated payment, and entered judgment in favor of plaintiff for $7,835.28, the amount due and owing under the Policy for plaintiff's total disability (including interest), plus $150 per month until plaintiff attains the age of 65. The court's decision as to attorney fees and costs was deferred until May 4, 1983, at which time the court denied plaintiff's motion for fees and punitive damages on the ground that there was no evidence that defendant's behavior was vexatious or unreasonable, but allowed plaintiff to recover $57.14 in costs based on his having prevailed on the issue of liability.

Opinion

On appeal, defendant argues that the trial court erred in holding, as a matter of law, that the word "cause" as it appears in the Exceptions Provision of the Policy is ambiguous. Defendant asserts that the Exceptions Provision "is nothing more than a variation on provisions commonly designated as 'Recurrence Disabilities,'" and, as such, the word "cause" refers to the "disabling condition" which precipitates the period of disability. Defendant further contends that in this case, the disabling condition for both periods of disability was a herniated lumbar disc.

■ Plaintiff, on the other hand, defines "cause" as the precipitating accident or trauma rather than the resulting condition. Based on this definition, plaintiff contends that the fact he injured his back in both accidents is irrelevant because each period of disability was precipitated by a different accident. Further, the actual spinal injuries, or disabling condition, sustained by plaintiff as the result of each accident were not identical. As an alternative argument, plaintiff contends that the word "cause" in the Exceptions Provision is ambiguous; thus, the Policy must be construed most liberally in favor of him. We concur with plaintiff's alternative argument.

In addressing defendant's contention that the trial court erred in its finding of ambiguity, we are cognizant of the applicable standard of review which permits reversal of the trial court's decision only upon the reviewing court's finding that the trial court has abused its discretion. (*Perschall v. Metropolitan Life Insurance Co.* (1983), 113 Ill. App. 3d 233, 239, 446 N.E.2d 570.) We further recognize the rule relied upon by plaintiff that ambiguous or equivocal expressions in an insurance policy that operate to limit the insurer's liability will be construed strongly against the insurer and liberally in favor of the insured. *Wallace v. Blue Cross Hospital Service, Inc.* (1973), 13 Ill. App. 3d 803, 808, 300 N.E.2d 531.

In support of its argument that the Exceptions provision is merely a variation on commonly designated recurrence disabilities provisions which have been found to be uniformly clear and unambiguous, defendant relies upon *Skinner v. Continental Casualty Co.* (Fla. App. 1972), 268 So. 2d 576, *Paulin v. Midland Mutual Life Insurance Co.* (1974), 37 Ohio St. 2d 109, 307 N.E.2d 908, and *Pilot Life Insurance Co. v. Karcher* (1976), 217 Va. 497, 229 S.E.2d 884. After careful review of these cases, we find them unpersuasive of defendant's position for the principal reason that the definition of "cause" was never at issue in any of the cases. In *Skinner*, the issue before the court was whether plaintiff's disability was continuous, *i.e.*,

whether there was a period between plaintiff's claims for disability when he was not disabled within the meaning of the policy (*Skinner v. Continental Casualty Co.* (Fla. App. 1972), 268 So. 2d 576, 578). While we acknowledge the *Skinner* court's statement that the policy language was not ambiguous, we also note that it was merely *dicta* and of no persuasive value to the case at bar. In *Paulin*, the issue before the court was insured's claim that notwithstanding a 180-day provision in the policy, a period of disability ensuing more than 180 days after sustaining an injury could be treated as a disability due to injury rather than due to sickness. Finally, in *Pilot*, the court was confronted with the viability of a policy that had lapsed for nonpayment of premiums. In response to the contention that the recurring disabilities provision was ambiguous, the *Pilot* court found no such ambiguity existed because the pertinent terms were defined within the policy. Clearly, this is not the factual situation in the present case.

Defendant further argues that the "purpose and plain effect" of the Policy's Exceptions Provision "is to avoid litigation each time an insured employee sustains a recurrence of the disability within six months of resuming active employment." While this may be the purpose and effect of the provision, it certainly cannot be achieved through the use of ambiguous language. All terms, especially pivotal terms such as the one at issue here, must be unequivocally defined within the Policy. Careful drafting is the only way to assure that purpose and effect is effectuated rather than frustrated.

■ Defendant next argues that it was entitled to summary judgment on the basis of its "proof of continuity" of the injury. We disagree and note that there is sufficient evidence in the record to disprove continuity: (1) a statement, dated July 7, 1978, signed by Dr. Thomas Cook, one of the employer's staff physicians, indicating that all lifting restrictions had been removed and that plaintiff was able to return to work; (2) plaintiff's affidavit stating that immediately prior to his return to work, he was examined by Drs. Kanter, Cook and Featherbush (another staff physician) and declared fit to return to work and resume his normal duties; and (3) Dr. Shermer's letter affidavit indicating that in addition to a recurrence of the previous "apparently recovered" herniated disc which had been caused by the 1977 accident, there was a new disc herniation caused by the 1978 accident. Interestingly, Dr. Kanter's subsequent conclusion that the July 1978 injury was the same injury that had prevented plaintiff from working during his first period of disability appears to contradict his own diagnosis. However, as the trial court stated, any similarity between pathologies is irrelevant in light of the determination that the

Policy language is ambiguous.

■ We next address plaintiff's contention on cross-appeal that the trial court abused its discretion in failing to award attorney fees and punitive damages pursuant to section 155 of the Code, which provides in pertinent part:

> "In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling the claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $5,000." Ill. Rev. Stat. 1983, ch. 73, par. 767.

The question of vexatious and unreasonable delay is one of fact, the determination of which is discretionary with the trial court after it has examined and assessed the totality of circumstances. (*Deverman v. Country Mutual Insurance Co.* (1977), 56 Ill. App. 3d 122, 124, 371 N.E.2d 1147.) Absent an abuse of that discretion, the trial court's determination will not be disturbed. (*Fassola v. Montgomery Ward Insurance Co.* (1982), 104 Ill. App. 3d 825, 832, 433 N.E.2d 378.) In the present case, we concur with the trial court that plaintiff has not presented sufficient evidence to demonstrate that defendant's denial of benefits was vexatious and unreasonable. To the contrary, the record indicates that defendant asserted a legitimate policy defense which was argued vigorously and 'supported by relevant case law. The mere fact that defendant did not prevail does not render it liable for section 155 fees and damages. See *Cummings Foods, Inc. v. Great Central Insurance Co.* (1982), 108 Ill. App. 3d 250, 259, 439 N.E.2d 37.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

LORENZ and SULLIVAN,* JJ., concur.

---

*Justice Wilson, who participated at oral arguments, has since died. Justice Sullivan substituted, reviewed the briefs and record, and listened to the tape of the oral arguments.