EMERITO SOLIVAN, Plaintiff-Appellee and Cross-Appellant, v. COMMONWEALTH EDISON MUTUAL BENEFIT ASSOCIATION, Defendant-Appellant and Cross-Appellee.

First District (2nd Division)   No. 85—1619

Opinion filed July 15, 1986.

---

[1]An order to this effect was entered by this court on March 10, 1986. This opinion followed.

Jones, Ware & Grenard, of Chicago (Mitchell Ware and Frank Grenard, of counsel), for appellant.

Jay A. Baier, Ltd., of Chicago (Jay A. Baier and Joseph Schreiber, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff-appellee, Emerito Solivan, after being denied continued-disability benefits by defendant-appellant Commonwealth Edison Mutual Benefit Association (hereinafter the association), initiated this action seeking reinstatement of the terminated benefits. In essence, Solivan asserted that the association's actions were either arbitrary and capricious, or were taken in bad faith. Both parties filed motions for summary judgment. After a hearing on the motions, the circuit court granted Solivan reinstatement, although it denied his request for attorney fees. The court also denied the association's summary judgment motion. On appeal, the association assails the court's decision to grant Solivan summary judgment; Solivan on cross-appeal claims the court erred in denying him attorney fees. We affirm.

The facts of the case are not substantially in dispute. Emerito Solivan was employed by Commonwealth Edison as a meter reader, commencing employment on January 2, 1979. As a result of this employment, Solivan joined the association, which was a voluntary, unincorporated association designed to provide its members with disability coverage. The parties to this appeal agree that the disability plan involved in this case is governed by the provisions of the Employee Retirement Income Security Act (hereinafter ERISA) (29 U.S.C. sec. 1001 *et seq.* (1985)).

On August 10, 1981, Solivan fractured his left leg while playing baseball. As a result of the injury, he was placed on disability from that date through March 1, 1982. On August 27, 1982, a metal plate which had been placed on the fracture was removed, occasioning a second absence from work dating from August 27, 1982, until October 12, 1982, and benefits were paid for this second absence. When Solivan returned to work, the fracture had completely healed.

On January 9, 1983, Solivan again fractured his left leg, this time while dancing. The fracture was located at the same site as the initial break. As with the initial fracture, Solivan again requested disability benefits from the association.

The key provisions at issue herein as contained in the ERISA plan are the following:

"Rule C(5) *RELAPSE*

If the member is absent on disability and returns to full-time work, another absence *for the same cause* shall be termed a "Relapse" and will be considered a continuation of the previous

disability in either of the following circumstances:

\*\*\*

(b) the previous absence exceeded 26 weeks and the second absence occurs within one year of the return to work full-time.

Rule A(6)(d) *REINSTATEMENT*

A member who returns to work after having received 52 weeks of benefits for any one case of disability may be reinstated by unanimous approval by the Board after consultation with its Medical Advisor. If, however, a member is approved for reinstatement, such member shall not be entitled to receive benefits for prior disability for which maximum benefits were paid or a disability *arising out of, connected with, or resulting from the cause or effect* of such prior disability." (Emphasis added).

Solivan received a pamphlet detailing these provisions prior to sustaining the injuries involved herein.

Upon Solivan's request for renewed disability benefits for the second fracture, Robert Stauder, the association's administrator, wrote Solivan and informed him that the association considered the injury to be a reoccurrence of the initial fracture, and that as a result the "relapse rule" would apply. Stauder's letter requested or invited Solivan to submit details regarding the injury if he disagreed with the association's judgment. This letter did not inform Solivan of the specific plan provision relied upon, nor did it set out the procedure by which Solivan could appeal the decision. Solivan wrote Stauder, stating that the injury was not a reoccurrence of the prior disability, but was caused by moisture and debris on the dance floor which caused him to fall and fracture the leg. Solivan submitted X rays for review by the association. In a letter dated May 26, 1983, Solivan was informed that his benefits had expired as of that date.

In November 1983, Solivan appeared before the association's executive board to appeal the decision. The board was provided with Solivan's medical records, although Solivan did not provide any expert medical opinion as to the injury. The board, in a letter dated November 10, 1983, advised Solivan that his appeal had been denied.

Solivan then instituted this action in the circuit court, asserting that the board's decision was arbitrary and capricious, or was taken in bad faith. As noted, a hearing was held on the cross-motions for summary judgment on May 15, 1985. The circuit court, after noting that the second fracture was caused by a second traumatic incident, found that the board's position in denying benefits was "grossly incorrect," and granted Solivan's motion for a summary judgment.

OPINION

On appeal, the association attacks the circuit court's decision on several grounds. First, the association asserts that the court failed to apply the appropriate, deferential standard of review mandated for court review of the administration of ERISA plans. Next, assuming that the correct standard was applied, the association claims that the circuit court must be reversed as Solivan failed to meet that standard. Finally, the association decries the circuit court's usage of a State court decision in reaching its determination in this case. Solivan, meanwhile, challenges the court's denial of his request for attorney fees.

■ We address first the question of the appropriate standard of review. ERISA, by its explicit language, evinces a strong congressional mandate to preempt State law and regulation of employee benefit plans falling under its purview, and to substitute in its place a uniform Federal common law to govern the administration of such plans. (29 U.S.C. par. 1144(a) (1985).) This Federal common law would be applicable to all suits brought under ERISA, whether in State or Federal court. (*Reiherzer v. Shannon* (7th Cir. 1978), 581 F.2d 1266, 1271.) In analyzing the administration of ERISA plans, a relatively deferential standard of review was adopted: the findings of the plan's administrators are to be upheld by the court unless they re found to be either (1) arbitrary and capricious; (2) not supported by substantial evidence; or (3) erroneous on a question of law. (*Wardle v. Central Southeast & Southwest Areas Pension Fund* (7th Cir. 1980), 627 F.2d 820, 824.) This standard of review is applied in order to avoid excessive judicial intervention in, and interference with, the administration of ERISA plans. (*Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan* (2d Cir. 1983), 698 F.2d 593, 599.) Rather, ERISA seeks to place the primary responsibility for plan administration on the board created by the plan itself; here, the executive board. (See *Challenger v. Local Union Number 1* (7th Cir. 1980), 619 F.2d 645, 649.) Courts are not empowered to conduct *de novo* hearings to review an administrator's decision. *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan* (2d Cir. 1983), 698 F.2d 593, 599.

■ As a consequence of the deference accorded plan administrators, a court hearing an ERISA claim may not substitute its judgment for that of the administrators, subject to the caveat that the administrators have not acted arbitrarily and capriciously, in a manner unsupported by substantial evidence, or in a manner that is erroneous on a

matter of law. (*Reiherzer v. Shannon* (7th Cir. 1978), 581 F.2d 1266, 1271.) It follows that where the ERISA plan's administrators give a plan a reasonable construction, that construction is binding on a court reviewing decisions made thereon, even in the fact of alternative, reasonable interpretations of the plan. *Gordon v. ILWU-PMA Benefit Funds* (9th Cir. 1980), 616 F.2d 433, 439.

This is not to say that all of the decisions made by plan administrators are somehow fully insulated from challenge. As noted, these decisions may be overturned where any of the three aforementioned conditions are shown to exist (arbitrary and capricious action, a failure of evidentiary support, or error on a matter of law). Based on these premises, courts have stated that bad faith decisions are subject to reversal (see *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan* (2d Cir. 1983), 698 F.2d 593, 599); plan constructions which are implausible, contrary to the plan's written language, or which render portions of the plan superfluous have been rejected (*Rhoton v. Central States Southeast & Southwest Areas Pension Fund* (6th Cir. 1983), 717 F.2d 988, 988-89); and the failure to adequately define terms has been noted as a contributing factor to a finding of arbitrary action (*Reiherzer v. Shannon* (7th Cir. 1978), 581 F.2d 1266, 1271). The parties do not dispute these basic principles underlying ERISA plan administration.

In the present case, counsel for the association clearly defined the appropriate standard for the court, both in the pleadings filed as well as orally before the court:

> "[Counsel for the association]: [What the association] is saying in this particular case is that this is an ERISA case. Under ERISA, the judgment of the board which makes the decision will only be overturned under three conditions. Those three conditions are: number one, the decision of the board is either found to be arbitrary and capricious; number two, that as a matter of law the board was wrong; or, number three, that just by virtue of substantial evidence the decision of the board didn't hold water.
>
> Now, those are the reviewing standard since this case is—comes under the ERISA.
>
> THE COURT: You're saying that [Solivan], in order to be successful, has to show all three of those things?
>
> [Counsel for the association]: No, one of them.
>
> THE COURT: Just one of them?
>
> [Counsel for the association]: One of them."

At a minimum, the record begets only the conclusion that the circuit court was amply aware of the applicable Federal standard of review when it ruled on the cross-motions for summary judgment.

■■ Moreover, a review of the entire transcript manifests the conclusion that the court did indeed comply with that deferential standard. The flaw in the association's assault on the court's ruling is the drumbeat repetition of the phrase "arbitrary and capricious" as if those words summarize all review. The association's trial counsel, as quoted above, conceded that Solivan could succeed in overturning the executive board if *any* of the three conditions were met. The association argued in the circuit court that its interpretation of the plan was reasonable, and that the decision to terminate benefits was therefore binding on the court. The court responded:

"I appreciate that comment, but I think it's grossly incorrect. I think it's a separate accident. It's very simple.

To me, the facts seem self-evident.

So that will be my ruling."

Later on, the court reiterated its view, stating that the board's decision was "clearly in error." Thus, although the court did not utter the shibboleth "arbitrary and capricious," it is clear that the court did comport with the appropriate standard of review. Succinctly, the court was attempting to discern whether the association's decision was supported by substantial evidence, that is, whether the association's conclusion that the second fracture was occasioned by the "same clause" as the first, so as to fall within the ambit of the relapse rule, was supported by the evidence. We cannot, therefore, agree with the association's appellate assertion that the circuit court abandoned the appropriate standard of judicial review.

Neither can we accept the association's alternative contention that the circuit court reached an erroneous conclusion, albeit premised on a correct standard of judicial review. The circuit court initially noted that the association characterized the second fracture to be a reoccurrence of the first break, and therefore termed the second break a relapse of the first. The court found that decision to be clearly in error, a determination which was the basis of the court's decision to overrule the association. There is more than ample support in the record for the court's decision.

An analysis of the propriety of that determination rests in large part on the construction to be given to the phrase "for the same cause" in the relapse rule. The association claims that this language means that any injury arising from the same *condition* is to be considered a relapse; Solivan, conversely, posits that the import of the

phrase is that only injuries arising from the same *physical activity or trauma* should be so construed. The association goes on to assert in this forum, as it did before the circuit court, that its interpretation of the rule need not be correct in order to survive judicial scrutiny. Succinctly, the association claims, in its own words, the "right to be wrong." The association relies on cases requiring that courts defer to plan administrators in the construction of plan provisions as support:

> "Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." (*Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan* (2d Cir. 1983), 698 F.2d 593, 601.)

Not surprisingly, the association finds that its interpretation of the relapse rule was reasonable, and therefore was controlling. Solivan claims that the circuit court was privileged to reject that construction, as it was unreasonable.

It is clear, as Solivan notes, that an interpretation of an ERISA plan which is contrary to the language of that plan is unreasonable. (*Winston v. Trustees of the Hotel & Restaurant Employees & Bartenders International Union Welfare Fund* (1982), 110 Ill. App. 3d 163, 167, 441 N.E.2d 1217.) Equally clear is the fact that an ERISA administrator is not insulated from judicial review of his actions.

> "[An administrator] cannot claim that [its] decision was proper on the ground that it was consistent with [its] past practice because '[b]eing consistently wrong can hardly be sanctioned as right.' " (110 Ill. App. 3d 163, 167, 441 N.E.2d 1217, quoting *Snyder v. Titus* (E.D. Va. 1981), 513 F. Supp. 926, 934.)

Solivan also cites *Rhoton v. Central States Southeast & Southwest Areas Pension Plan* (6th Cir. 1983), 717 F.2d 988, in support of his contention. In that latter case, the court overturned the trustees' interpretation of an ERISA plan clause. The plan required that beneficiaries elect between disability benefits and retirement benefits, so as to preclude payment of both kinds. The trustees construed this requirement to impose a final, binding election on applicants as to benefits to be drawn from the fund. This construction the court found implausible, and accordingly the court rejected it.

In reaching this conclusion, the court resorted to reading the pertinent plan provision in light of other provisions within the plan. Similarly herein, comparison may be had between the exclusion embodied in the relapse rule, and parallel provisions in the reinstatement rule. The former states that an injury will be classified a relapse if it is one

arising from "the same cause"; the latter states that benefits may be barred when reapplication involves a second injury "arising out of, connected with, or resulting from the cause or effect of such prior disability."

The association's interpretation of the relapse rule appears to be practically an outright adoption of the broad exclusion contained in the reinstatement rule. It hardly seems rational that if the drafters of the plan had intended the same exclusion, they would use exactingly clear language in the reinstatement rule, while abandoning that clarity in favor of more amorphous language in the relapse rule. The inference to be drawn from this comparison is that the drafters did not intend to treat a relapse with the same harsh pen as would be employed for reinstatement in the plan. It follows that the association's interpretation of the relapse rule was grossly incorrect, as the circuit court found, and at least as implausible as the construction of the plan pursued by the trustees in *Rhoton*.

This conclusion finds support in *Winston v. Trustees of the Hotels & Restaurant Employees & Bartenders International Union Welfare Fund* (1982), 110 Ill. App. 3d 163, 166-67, 441 N.E.2d 1217, wherein the court cited favorably *Snyder v. Titus* (E.D. Va. 1981), 513 F. Supp. 926, 935, which stated:

> "[T]he Court cannot permit such an unfounded interpretation to deprive an employee of his benefits where he has no way of anticipating such a deprivation upon reading the clear language in the plan in effect at the time of his application. A contrary result, the Court believes, would open the door to a shell game in the administration of pension plans, frought [*sic*] with potential abuse and caprice."

Similarly herein, to allow the association to ascribe retroactively an interpretation to the relapse rule which would render narrower language in the reinstatement rule surplusage would be tantamount to the "shell game" condemned in *Snyder* and *Winston*. Accord, *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan* (2d Cir. 1983), 698 F.2d 593, 599 ("Where the trustees of a plan *** by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious").

▪ Equally significant to the conclusion that the association erred in its characterization is the evidence adduced before the association's executive board. It was conceded that the initial fracture had healed well in advance of the second break, and it was further admitted that the injury was caused by a second traumatic incident. In light

of these facts, it is difficult to discern any reasonable explanation for the board's characterization of the injury as a relapse. It follows that the circuit court did not err in overturning the association's decision.

The association also protests the fact that the circuit court considered *Herrera v. Benefit Trust Life Insurance Co.* (1984), 126 Ill. App. 3d 355, 466 N.E.2d 1172, a case involving the interpretation of an insurance policy. As noted, ERISA explicitly provides for Federal preemption of the employee-benefit field. (29 U.S.C. sec. 1144(a) (1985).) The association places great reliance on the circuit court's statement that it would be difficult to find two cases closer in fact than *Herrera* and the instant case.

As to this issue, we note initially that the court explicitly stated that its decision was not predicated on the *Herrera* decision:

> "Irrespective, if the *Herrera* case hadn't even come out, without the guidance of the *Herrera* case, I would still have to hold that it's a separate incident."

Inasmuch as the circuit court disclaimed any allegiance to that decision in reaching its determination, we cannot hold that the association was somehow wronged by the court's mention of that case prior to pronouncing judgment.

■ Equally important in evaluating this claim is the role State court decisions play in the administration of ERISA. While it is true that ERISA provides preemption and contemplates the development of a uniform Federal common law, ERISA does not bar all resort to State court decisions and regulations in the formulation of that common law:

> "Where the courts are required themselves to fashion a federal rule of decision, the source of that law must be federal and uniform. Yet, state law where compatible with national policy may be resorted to and adopted as a federal rule of decision \*\*\*. [State sources] will no doubt play a major role in the development of a federal common law under ERISA, particularly in defining rights under employee benefit plans." (*Wayne Chemical, Inc. v. Columbus Agency Service Corp.* (N.D. Ind. 1976), 426 F. Supp. 315, 325, *modified on other grounds* (7th Cir. 1977), 567 F.2d 692.)

Certainly the court was not preempted in this case from consideration of the *Herrera* decision in evaluating the questions before it, particularly in the absence of contrary Federal law on the point. As noted by the court in *Shaw v. Kruidenier* (S.D. Iowa, 1979), 470 F. Sup. 1375, 1382, *aff'd* (1980), 620 F.2d 307, the Federal common law pertaining to ERISA "does not spring from whole cloth." Rather, it is developed

incrementally. We cannot conclude that the court's reference to *Herrera* was decisive error, particularly in the absence of any reliance thereon.

■ The final issue presented on review is that contained in Solivan's cross-appeal: whether the circuit court erred in denying his request for attorney fees. ERISA does allow for the award of such fees:

> "In any action under this title *** by a participant, beneficiary, or fiduciary, the court *in its discretion* may allow a reasonable attorney's fee and costs of action to either party." (Emphasis added.) (29 U.S.C. sec. 1132(g)(1) (1985).)

Solivan claims that such fees are given to prevailing claimants as a matter of course unless there is a compelling reason not to do so, absent in the instant case. We reject this assertion.

The statute commits the decision to award fees to the court's discretion, which should not be disturbed unless abused. (*Marquardt v. North American Car Corp.* (7th Cir. 1981), 652 F.2d 715, 717.) The *Marquardt* court went on to list several factors to be considered in determining whether that discretion was abused. However, in *Bittner v. Sadoff & Rudoy Industries* (7th Cir. 1984), 728 F.2d 820, 830, the same court rejected the argument that such fees are awarded as a matter of course. If Congress had intended that result, it surely could have explicitly provided language mandating such a result, as it did in the subparagraph immediately following the one at issue. (29 U.S.C. sec. 1132(g)(2)(D) (1985).) Inasmuch as the decision was charged to the circuit court's discretion, and in the absence of facts showing that discretion to have been abused, we cannot overturn the circuit court's determination.

For the above stated reasons, the decision of the circuit court is affirmed.

Affirmed.

BILANDIC, P.J., and HARTMAN, J., concur.