DAVID MOLNAR, Plaintiff-Appellee and Cross-Appellant, v. CONSECO MEDICAL INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.

First District (4th Division)    No. 1—04—0821

Opinion filed June 9, 2005.

Wildman, Harrold, Allen & Dixon, L.L.P., of Chicago (Bart T. Murphy and R. Michael McCann, of counsel), for appellant.

Foote, Meyers, Mielke & Flowers, L.L.C., of Geneva (Craig S. Mielke and Craig D. Brown, of counsel), for appellee.

JUSTICE QUINN delivered the opinion of the court:

In both 1981 and 1995, David Molnar had surgery to implant and replace an artificial left hip, necessitated by a childhood injury and severe arthritis. In May 2000, after his original insurer had gone out of business, Molnar purchased a health insurance policy from Conseco Medical Insurance Company (Conseco) that included the following "Exception Endorsement":

"NO BENEFITS WILL BE PAID UNDER THIS CERTIFICATE OF INSURANCE, OR UNDER ANY RIDER OR AMENDMENT THERETO, FOR DISABILITY, LOSS OR EXPENSE RESULTING FROM OR CAUSED BY ANY DISEASE OR DISORDER OF THE LEFT HIP INCLUDING ANY OPERATION OR TREATMENT FOR OR COMPLICATIONS THEREOF SUFFERED BY DAVID A. MOLNAR."

Molnar signed this exception endorsement just underneath a line that

read: "THE POLICY/CERTIFICATE SHALL BE NULL AND VOID UNLESS THIS ENDORSEMENT IS SIGNED BY THE APPLICANT. I HAVE READ AND ACCEPTED THIS ENDORSEMENT."

In July 2001, Molnar began to experience problems with his left hip. After undergoing two operations to remove and replace his artificial left hip (his second such hip replacement surgery), Molnar filed a claim with Conseco for reimbursement of his medical expenses. Relying on the above-quoted exception endorsement, Conseco refused.

Molnar asked Conseco to reconsider its decision based upon letters from his doctors stating that the injury to his left hip was due to a tooth infection which had traveled through his bloodstream down to his hip. According to the doctors' letters, Molnar's 2001 hip operations were unrelated to "a pre-existing condition" or to "his previous hip surgery." When Conseco refused to change its initial decision, Molnar filed suit.

In his complaint, Molnar asserted two claims: (1) breach of contract for Conseco's failure to pay his medical expenses from his hip operations and (2) bad faith under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2002)) for Conseco's vexatious and unreasonable denial of coverage. After both Molnar and Conseco filed cross-motions for summary judgment, the circuit court found in favor of Molnar on his breach of contract claim.

Relying upon *Herrera v. Benefit Trust Life Insurance Co.*, 126 Ill. App. 3d 355 (1984), the circuit court found that the exception endorsement was ambiguous and construed it in favor of Molnar as excluding coverage only for "diseases or disorders that occur because of the existing condition (a prior hip replacement with a prosthetic joint) of the hip and not external factors that injure or affect the hip." The court found that because "the [infection] from the tooth was an external factor and not a pre-existing condition," the exception endorsement did not bar coverage.

The court also found, however, that Conseco's reliance upon this exception endorsement was not so unreasonable as to constitute bad faith under the Illinois Insurance Code and granted summary judgement for Conseco on Molnar's bad-faith claim under section 155 of the Illinois Insurance Code. Both Conseco and Molnar filed cross-notices of appeal.

■ Initially, we note that even though Molnar filed a notice of appeal (presumably, to challenge the circuit court's finding that there was no genuine issue as to whether Conseco had acted in bad faith), he has failed to file any motion or brief related to that appeal. In both his response brief to Conseco's opening brief for its appeal and the

supplemental brief ordered by this court,[1] Molnar mentions neither his cross-appeal nor the issues he sought to raise in it. Therefore, any issues he might have raised are waived (see 188 Ill. 2d Rs. 341(e)(7), (f) (stating that any issues not raised by appellee in his brief are waived and "shall not be raised in the reply brief, in oral argument, or on petition for rehearing")), and we dismiss Molnar's cross-appeal for want of prosecution as requested by Conseco in its reply brief to its appeal (see *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 155-56, 821 N.E.2d 1228, 1238 (2004) (dismissing cross-appeal for want of prosecution)).

## ANALYSIS

On appeal, Conseco contends that the circuit court erred in finding that the exception endorsement was ambiguous and that it did not bar coverage for the expenses Molnar incurred from the operations to his left hip in 2001. Conseco maintains that the exception endorsement is broad and bars coverage for any expense incurred for the treatment of Molnar's left hip. Conseco also argues that, even if the exclusion is inapplicable where the injury to his hip was caused by external factors, Molnar failed to provide sufficient admissible evidence to support the circuit court's finding that the cause of his 2001 hip replacement operations was the external factor of a tooth infection.

Molnar, on the other hand, contends that the exception endorsement is ambiguous because the word "cause" contained in that endorsement could encompass either (1) the direct cause of the expense, *i.e.*, expenses incurred from a left hip operation regardless of the cause of the injury to the left hip that necessitated the operation (expenses not covered) or (2) an indirect expense cause by an "external and precipitating accident, trauma[,] or condition," *i.e.*, expenses incurred after being hit by a bus or suffering a tooth infection which causes injury to the hip which necessitates a hip operation (expenses covered). Because this ambiguity exists, Molnar argues, the circuit court properly construed the exception endorsement in his favor to find that coverage existed. Molnar also argues that there was sufficient evidence, submitted by Conseco itself, to support the circuit court's finding that his tooth infection was the external cause of his 2001 hip operations.

---

[1]On March 11, 2005, this court ordered both parties to file supplemental briefs addressing *Wynn v. Washington National Insurance Co.*, 122 F.3d 266 (5th Cir. 1997), *Nolan v. Golden Rule Insurance Co.*, 171 F.3d 990 (5th Cir. 1999), *Carthane v. Continental Casualty Co.* No. Civ. A. 99—3107 (E.D. La. 2000), and section 20 of the Illinois Health Insurance Portability and Accountability Act (215 ILCS 97/20 (West 2002)).

■ An insurance policy is a contract, to which the general rules governing the interpretation of other types of contracts apply. See *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). When construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement. *Central Illinois Light Co. v. Home Insurance Co.*, 342 Ill. App. 3d 940, 950-51 (2003). A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997).

If the words of a policy are clear and unambiguous, they must be afforded their plain, ordinary and popular meaning. *Traveler's Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292-93 (2001), quoting *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). "Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation. Although 'creative possibilities' may be suggested, only reasonable interpretations will be considered." *Hobbs*, 214 Ill. 2d at 17, quoting *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993). Simply put, we will not strain to find an ambiguity where none exists. *Hobbs*, 214 Ill. 2d at 17, citing *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497 (1999). Thus, if the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy. *Hobbs*, 214 Ill. 2d at 17.

■ Though it is well settled that ambiguous or equivocal expressions in an insurance policy that operate to limit the insurer's liability will be construed strongly against the insurer and liberally in favor of the insured (see *Herrera v. Benefit Trust Life Insurance Co.*, 126 Ill. App. 3d 355, 359 (1984)), this rule of construction only comes into play when the policy is ambiguous (*Hobbs*, 214 Ill. 2d at 17, citing *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 423 (1980)). We disagree with the circuit court that the language of the exception endorsement here is ambiguous.

The endorsement states, with emphasis added and in pertinent part, that "[N]O BENEFITS WILL BE PAID *** FOR DISABILITY, LOSS OR EXPENSE RESULTING FROM OR CAUSED BY *ANY DISEASE OR DISORDER OF THE LEFT HIP INCLUDING ANY OPERATION OR TREATMENT* FOR OR COMPLICATIONS THEREOF." Though broadly worded and broad reaching, this endorsement means exactly what it says: any expense that Molnar incurs because of any "disease," "disorder," "operation or treatment for," or "complications" of his left hip will not be covered, regardless of the cause of that "disease," "disorder," "operation," "treatment," or "complication."

■ Here, Molnar sought reimbursement for medical expenses he incurred as a result of two operations on his left hip. Under the plain language of the policy's exception endorsement, such expenses are not covered. The fact that a tooth infection might have been the catalyst for the hip operations is irrelevant; the endorsement is triggered by Molnar seeking reimbursement for expenses "resulting from or caused by" an "operation" to his left hip. Moreover, even if, *arguendo*, the tooth infection had caused Molnar's hip problems, the expenses he incurred still would have resulted from or been caused by a "complication" of his left hip and, thus, the endorsement still would bar coverage.

As recognized by the circuit court, this means that had Molnar been hit by a bus (the circuit court's hypothetical, not ours), injuring both his right and left hips in the process, only those expenses incurred from treatment to his right hip would have been covered by the insurance policy issued by Conseco. Though this may be a bizarre result, and one with which the circuit court did not agree, it is what Molnar signed up for when he accepted this exception endorsement. We could not find, nor has Molnar cited, any rule of law barring insurance companies from offering, or insureds from accepting, a broad-reaching exclusion like the exception endorsement here.

However, rules of contract interpretation and construction bar courts from straining to create ambiguities where none exists. See *Hobbs*, 214 Ill. 2d at 17. Yet, the circuit court did just that, reading the phrases "existing condition" and "external factors" into the endorsement to find that Molnar's expenses were covered, even though those phrases appear nowhere in the language of the endorsement. We find that the circuit court erred in doing so and that the endorsement means what it says: any expense Molnar incurred from an operation to his left hip is not reimbursable under the policy.

That being said, there is no doubt that Conseco's impetus for requiring Molnar to sign and accept this exception endorsement as a prerequisite for providing health insurance to him was its knowledge of Molnar's preexisting artificial left hip. Why else would Conseco have specifically listed Molnar's left hip in the exception exclusion? It is not as if, before Molnar signed the insurance policy, an employee of Conseco chose one of Molnar's body parts randomly and included it in the exception endorsement. Acknowledging that the impetus for the endorsement was Molnar's preexisting condition does not lead either to the conclusion that the endorsement is ambiguous or to the circuit court's interpolation of that endorsement with the phrases "existing condition" and "external factors."

In *Wynn v. Washington National Insurance Co.*, 122 F.3d 266,

267-68 (5th Cir. 1997), the insured, who had pulled a muscle in her back in 1992, signed an "Exception Endorsement" in 1993 that read:

"No benefits will be paid under this certificate of insurance, or under any rider or amendment thereto, for disability, loss or expense resulting from or caused by any injury to or disease or disorder of the spine or spinal region, fractures and cancer excepted, suffered by [the insured]." *Wynn*, 122 F.3d at 267-68.

The policy also contained a preexisting conditions limitation that stated:

"The Policy does not cover charges incurred by a Covered Person during the first 24 months after his or her coverage became effective, if those charges are incurred 'because of a preexisting condition that was not disclosed in the application' for his or her coverage. The Policy 'does not cover any charges due to a condition that is excluded' by name or specific description even after that 24-month period." (Emphasis omitted.) *Wynn*, 122 F.3d at 268.

Approximately two years after signing the exception endorsement, the insured had treatment, including surgery, on a cervical disc. *Wynn*, 122 F.3d at 268. The insurer, citing the endorsement, denied coverage. *Wynn*, 122 F.3d at 268.

On appeal, the insured argued that the exception endorsement violated a Louisiana statute which placed a maximum time limit of 12 months after an insurance policy's effective date for preexisting limitations clauses. See *Wynn*, 122 F.3d at 268.[2] The insured argued that the exception endorsement was nothing more than "a method of excluding coverage for a pre-existing condition" in violation of the statute. *Wynn*, 122 F.3d at 268.

The Fifth Circuit disagreed, finding instead that "[a]n exception endorsement is qualitatively different from a pre-existing conditions limitation." *Wynn*, 122 F.3d at 269. After noting that "an insurer in Louisiana is free to limit its liability 'just as individuals may,' " and that "[c]lear and unambiguous insurance contract provisions to that end are given effect" (*Wynn*, 122 F.3d at 269, quoting *Sargent v. Louisiana Health Service & Indemnity Co.*, 550 So. 2d 843, 845 (La. App. 1989)), the court interpreted the exception endorsement:

---

[2]Specifically, section 22:215:12 of the Louisiana Insurance Code stated, in part:

"Any hospital, health, or medical expense insurance policy *** which is delivered or issued for delivery in [Louisiana] on or after January 1, 1993, shall not deny, exclude, or limit benefits for a covered individual for losses due to a preexisting condition incurred more than twelve months following the effective date of the individual's coverage ***." La. Rev. Stat. Ann. § 22:215:12 (West 1995 & Supp. 1997).

"The exception endorsement clearly and unambiguously limited [the insurer's] liability for losses sustained by [the insured] occurring from disorders of the spine. As the district court noted, nothing in the exception endorsement suggests that it is an extension of the policy's pre-existing conditions limitation. Rather it is a separate and independent limitation on liability that the [insured] signed of [her] own accord as a condition to receiving insurance. Indeed, [the insurer] would have been entitled to refuse to insure [her] if [she] had not signed the exception endorsement." *Wynn*, 122 F.3d at 269.

The court went on to explain the difference between the exception endorsement and a preexisting conditions limitation clause:

"The preexisting conditions limitation operates separately and independently from the exception endorsement because it applies to conditions for which an endorsement has not been written and/or which were not disclosed on the application. That the limitation can operate independently of the endorsement is borne out by the fact that, in [her] summary judgment papers, [the insured] contended that [her] back surgery was *not* due to a pre-existing condition. They submitted an affidavit from a neurosurgeon to that effect. Thus, the endorsement does not operate to deny coverage for pre-existing conditions; rather, as written, it excludes coverage for 'any injury to or disease, or disorder of the spine or spinal region, fractures and cancer excepted', regardless of the source or when incurred.

*** [The insurer] consistently uses similar endorsements to exclude coverage for pre-existing conditions revealed on an application. Consequently, there is no genuine issue of fact as to whether the endorsement is an 'extension' of the pre-existing conditions limitation." (Emphasis in original.) *Wynn*, 122 F.3d at 269.

Thus, the *Wynn* court found that the exception endorsement was not ambiguous and barred coverage. *Wynn*, 122 F.3d at 269; see also *Nolan v. Golden Rule Insurance Co.*, 171 F.3d 990, 992-93 (5th Cir. 1999) (discussing *Wynn*).

In *Carthane v. Continental Casualty Co.*, No. Civ. A. 99—3107, slip op. at 1 (E.D. La. 2000), the District Court for the Eastern District of Louisiana discussed *Wynn* in considering an insured's argument that an "elimination endorsement" contained in a group insurance policy that she signed violated section 22:215:12 of the Louisiana Insurance Code, "which set[ ] the maximum time period during which an insurer may avoid coverage of pre-existing conditions." In *Carthane*, the insured, who suffered from endometriosis, sought coverage under a group insurance policy after her condition "flared up." *Carthane*, slip op. at 1. Her insurer denied coverage, arguing that the policy she

joined "included a 'waiver of coverage' or 'elimination endorsement' " for her preexisting condition. *Carthane,* slip op. at 1. Relying on *Wynn,* the insurer argued that the "elimination endorsement" was not subject to section 22:215:12.

The district court rejected both the insured's and insurer's reading of *Wynn*:

> "*Wynn* does not stand for [the insurer's] proposition that elimination endorsements are never subject to section 22:215:12. [Citation.] [The insured] likewise misreads *Wynn* by arguing that [it] stands for the proposition that one instance of excluding coverage for a preexisting condition revealed on an application violates section 22:215:12. [Citation.] Rather *Wynn* suggests that evidence that an insurer consistently used elimination endorsements to avoid the reach of section 22:215:12 can create a 'genuine issue of fact as to whether the endorsement is an "extension" of the pre-existing conditions limitation' in contravention of section 22:215:12 and Louisiana public policy." *Carthane,* slip op. at 3.

Finding "a genuine issue of fact regarding [the insurer's] practices vis-a-vis elimination endorsements" existed, the court denied the insurer's motion for summary judgment on the issue of coverage. *Carthane,* slip op. at 3.

The exception endorsement here mirrors the endorsement in *Wynn,* save the insured's body part that was included in the endorsement and excluded from coverage. Like the *Wynn* court, we find that the exception endorsement here "clearly and unambiguously limited [Conseco's] liability for losses sustained by [Molnar] occurring from disorders" of the left hip. See *Wynn,* 122 F.3d at 269. The next issue is whether this endorsement, though unambiguous, nevertheless contravenes Illinois' public policy. See *Hobbs,* 214 Ill. 2d at 17.

Section 20 of the Illinois Health Insurance Portability and Accountability Act limits an insurer's ability to "impose a preexisting condition exclusion." 215 ILCS 97/20 (West 2002). Such an exclusion is permitted "only if:

> (1) the exclusion relates to a condition (whether physical or mental), regardless of the cause of the condition, for which medical advice, diagnosis, care, or treatment was recommended or received within the 6-month period ending on the enrollment date;
>
> (2) the exclusion extends for a period of not more than 12 months (or 18 months in the case of a late enrollee) after the enrollment date; and
>
> (3) the period of any such preexisting condition exclusion is reduced by the aggregate of the periods of creditable coverage (if any, as defined in subsection (C)(1)) applicable to the participant or beneficiary as of the enrollment date." 215 ILCS 97/20(A)(1) through (A)(3) (West 2002).

Section 20, however, only applies to "a group health plan" or "a health insurance issuer offering group health insurance coverage." 215 ILCS 97/20(A) (West 2002).

Molnar concedes that section 20 is not applicable here. In fact, Molnar admits that he "does not claim that the Conseco endorsement is an illegal attempt to exclude or limit coverage for a pre-existing condition." Moreover, both Conseco and Molnar agree that the endorsement exclusion does not expressly refer or relate to the policy's preexisting conditions limitation clause.[3] Thus, we are not called upon to determine whether Conseco's use of this exception endorsement was improper or in violation of Illinois public policy (see *e.g.*, *Carthane*, slip op. at 3 (finding that a genuine issue existed as to whether the insurer's use of an exception endorsement violated a Louisiana statute placing limits upon an insurance policy's preexisting conditions limitation clause); *Lehmann v. Washington National Insurance Co.*, 979 F. Supp. 1290, 1292-93 (D. Mont. 1997) (finding an exception endorsement that precluded benefits for any disease or disorder of the fallopian tubes, ovaries or surrounding structures violated a Montana statute which barred insurers from excluding preexisting medical conditions in excess of 12 months from the effective date of the policy); *Williams v. National Casualty Co.*, 132 S.W.3d 244, 245, 249 (Mo. 2004) (holding that an exception endorsement that barred coverage for expenses incurred from or caused by "any disease or disorder of

---

[3]The policy's preexisting conditions limitation clause states:

**2. Pre-Existing Conditions Limitation**

Pre-Existing Condition means a Sickness or physical condition not fully disclosed on the application:

1. for which a Covered Person received medical care, treatment or medication within 24 months before the Covered Person's insurance became effective; or

2. which produced symptoms, within 24 months before the Covered Person's insurance became effective, which:

a. would have allowed a person trained in medicine to make a diagnosis of the condition producing the symptoms; or

b. would have caused an ordinary prudent person to seek medical diagnosis or treatment.

For a Pre-Existing Condition that is not fully disclosed to us in an application, we will not pay benefits for the charges that are incurred within the first 24 months after the person became a Covered Person.

No claim for Covered Charges incurred more than 24 months after a person became a Covered Person will be reduced or denied solely on the grounds that the charge is due to a Pre-Existing Condition, unless the condition was excluded or limited by name or specific description prior to the date the charge is incurred."

the prostate" violated a Missouri statute that prohibited an insurer from denying coverage to "any insured or prospective insured on the sole basis of the sex or marital status of such insured or prospective insured," including " '[r]estricting, reducing, modifying, or excluding benefits relating to coverage involving the genital organs of only one sex' ")).

Rather, we need only determine whether the language in the exception endorsement was ambiguous. See *Hobbs*, 214 Ill. 2d at 17 (noting that if the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy). As stated above, we find that it is not.

Both Molnar and the circuit court relied upon *Herrera* to support the finding that the exception endorsement here was ambiguous. In *Herrera*, in October of 1977, the insured, "a machinist for the Chicago and Northwestern Railway, sustained injuries to his spine and legs while throwing brake shoes across a pit during the course of his employment" and applied for disability benefits under his employer's group insurance policy. *Herrera*, 126 Ill. App. 3d at 356. Nearly a year after the injury and after receiving the maximum benefits permitted under his employer's group insurance policy, the insured received approval from his doctors to return to work. *Herrera*, 126 Ill. App. 3d at 356-57.

In July 1978, the insured "sustained injuries to his spine and legs while lifting a sledge hammer during the course of employment" and was rendered totally disabled. *Herrera*, 126 Ill. App. 3d at 357. He then filed a second claim for benefits under the policy, but the insurer rejected it, relying upon the "Exceptions and Reductions" provision of the policy, which stated:

> " '[I]ntermittent periods of total disability separated by less than six months of continuous active employment shall be considered as one continuous period of disability unless they arise from different and unrelated causes.' " *Herrera*, 126 Ill. App. 3d at 357.

The insurer argued that "the injury sustained by [the insured] on July 21, 1978, was an aggravation of a pre-existing condition for which [the insured] had already received maximum benefits." *Herrera*, 126 Ill. App. 3d at 357. In other words, the insurer argued that the insured had merely reinjured his back, which he initially injured in October 1977; consequently, the second injury was part of "one continuous period of disability," and, thus, there was no basis for him to file a second claim under the policy.

After the denial, the insured filed suit, seeking liquidated damages, as well as costs and attorney fees due to the insurer's vexatious and unreasonable refusal to pay. *Herrera*, 126 Ill. App. 3d at 357. The

trial court granted the insured's motion for summary judgment, finding that the "Exceptions and Reductions" provision was ambiguous because, in determining whether there was a basis for two separate disability claims, the word "cause" could mean either (1) the "cause" of the accident, *i.e.*, the insured's act of throwing brake shoes across a pit in 1977 or lifting a sledgehammer in 1978, both leading to a back injury, or (2) the "cause" of the disability, *i.e.*, the insured's injured back. See *Herrera*, 126 Ill. App. 3d at 358.

The appellate court affirmed, finding that because the word "cause" was ambiguous, the trial court properly construed the policy in favor of the insured. *Herrera*, 126 Ill. App. 3d at 359. Rejecting the insurer's argument that the clause was not ambiguous, the court stated:

> "[The insurer] further argues that the 'purpose and plain effect' of the Policy's Exceptions Provision 'is to avoid litigation each time an insured employee sustains a recurrence of the disability within six months of resuming active employment.' While this may be the purpose and effect of the provision, it certainly cannot be achieved through the use of ambiguous language. All terms, especially pivotal terms such as the one at issue here, must be unequivocally defined within the Policy. Careful drafting is the only way to assure that purpose and effect is effectuated rather than frustrated." *Herrera*, 126 Ill. App. 3d at 360.

As the clause in question in *Herrera* bears no relation to the exception endorsement here, both Molnar's and the circuit court's reliance upon *Herrera* is misplaced.

Moreover, even though the word "cause" appears in the exception endorsement here, it refers, not to the cause of the injury or disability, as it ambiguously did in *Herrera*, but instead to the cause of the expenses Molnar incurred and sought reimbursement for under the policy. There is no question from what those expenses resulted or by what they were caused. Thus, the ambiguity present in *Herrera* is simply not present here.

For the foregoing reasons, we reverse the circuit court's order granting summary judgment for Molnar on his breach of contract claim and order the court to enter summary judgment for Conseco. We also dismiss Molnar's cross-appeal for want of prosecution.

Reversed and remanded with instructions.

GREIMAN and THEIS, JJ., concur.