**Robert H. BJORKLUND, Personal Representative of Estate of Robert T. Olson, deceased, Appellant,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Respondent.**

**No. 50917.**

Supreme Court of Minnesota.

June 19, 1981.

Wiese & Cox, Minneapolis, for appellant.

Liefschultz & Dunn, Minneapolis, for respondent.

OTIS, Justice.

The issue raised by this appeal is whether or not an automobile dealer's loss, occasioned by the felonious conversion and sale of appellant's vehicles by an employee, is covered by a policy issued to appellant by respondent Aetna.

The trial court found the loss was expressly excluded by the terms of the policy and we affirm.

The employee, Neil Benedict, prepared new and used automobiles for sale and in so doing he had appellant's permission to take them from the dealership premises for cleaning. On twelve occasions, Benedict, without the plaintiff's knowledge or permission, did not return the vehicles, but sold them complete with title documents, and pocketed the proceeds.

The Aetna policy issued to appellant Olson contained the following exclusion:

This insurance does not apply:

\* \* \* \* \* \*

(f) Under comprehensive coverage and fire, theft, and supplemental coverage to loss resulting from:

(i) Someone causing the named insured to voluntarily part with the covered automobile by trick, scheme, or false pretense \* \* \*.

Significantly, appellant was offered insurance which would have included coverage for the losses described but declined to obtain it and chose instead to assume that risk.

*Jacobson v. Aetna Casualty & Surety Co.,* 233 Minn. 383, 46 N.W.2d 868 (1951) is cited by appellant as dispositive. There the insured garage owner was approached by a prospective car purchaser who induced the owner to permit him to test drive a car over the weekend. The car was never paid for nor returned.

In that case there was excluded from coverage "Under the theft, Larceny, Robbery or Pilferage coverage (if such policy covers these perils)—loss suffered by the Insured in case *he voluntarily parts with title to or possession of* any automobile at risk hereunder, whether or not induced so to do by any fraudulent scheme, trick, device, or false pretense, or otherwise." *Id.* at 384, 46 N.W.2d at 870 (emphasis in original).

The trial court in *Jacobson* held there was coverage and we reversed, holding that the exclusionary clause applied. Much of the discussion in that opinion dealt with the distinction between actual possession, constructive possession, and custody. Here on the other hand, perhaps in response to *Jacobson,* the policy makes no reference whatever to "possession" but simply excludes coverage whenever the insured is caused to voluntarily part with a vehicle by trick, scheme, or false pretense.

We are of the opinion that there is no ambiguity in the language of this policy and that it was the clear intent of the parties that coverage be excluded if the employer was induced to voluntarily part with its vehicles on the false pretense of an employee that he intended to service them whereas his actual purpose was to convert them to his own use.

Affirmed.

TODD, Justice (dissenting).

I must respectfully dissent from the majority opinion because its reasoning is not in line with our often-stated rules for the interpretation of insurance contracts.

Our general rule with regard to the interpretation of insurance contracts is that the words of the contract must be interpreted in their ordinary and usual sense so as to give effect to the intent of the parties as it appears in the policy language. *See Dairyland Ins. Co. v. Implement Dealers Ins. Co.,* 294 Minn. 236, 199 N.W.2d 806 (1969). In addition, the terms of an insurance policy should "be construed according to what a reasonable person in the position of the insured would have understood the words to mean rather than what the insurer intended the language to mean." *Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.,* 258 N.W.2d 570, 572 (Minn.1977). In this case, I believe the majority has violated both of these rules.

The intent of the parties to the insurance contract, in the absence of an ambiguity, must be determined from the words of the contract itself. An examination of the policy in this case reveals that the parties contemplated insuring the plaintiff's automobile inventory in the context of the plaintiff's business. For example, the policy provides for premium calculation on the basis of plaintiff's inventory on the last business

day of each preceding month. Thus, as in any successful car dealership, it was contemplated that plaintiff's inventory would be in a constant state of flux. The business of a car dealership also involves inventory moving onto and off of the premises for reasons other than that a final sale has been consummated. A car might be taken off the premises to effectuate a repair, to demonstrate to a customer, or, as in this case, to be washed in preparation for sale. The defendant is charged with knowledge of the nature of plaintiff's business and the risks it insures at the time the policy is issued.

The majority elevates the intent of the insurance company in drafting the policy language to a position of dominance over the insured's reasonable interpretation of the contract language. The majority seems persuaded that the changes in policy language made by the defendant after our decision in *Jacobson v. Aetna Casualty & Surety Co.*, 233 Minn. 383, 46 N.W.2d 868 (1951), are of significance. The language at issue in the *Jacobson* case excluded a loss caused to the insured if he "voluntarily parts with title or possession" of any covered automobile. *Id.* at 384, 46 N.W.2d at 870. The language of the policy exclusion in this case is "voluntarily part" with any covered automobile. In addition to this change, the majority relies on the fact that the insured was offered a differently worded policy that did not include the above-quoted exclusionary clause.

I do not believe that the changed policy language or the fact that the insured was offered a coverage that did include loss by trick, scheme, or false pretense is determinative of the question presented in this case. This is all evidence of the intent of the insurer, not of the insured. Nothing in the record indicates that the insured understood the differences in coverage, nor do I believe that a reasonable insured would interpret the policy language as the majority has done in this case.

The policy language is clear—it excludes a loss caused when someone induces the insured to part with a covered automobile by some trick or false representation. I would agree with the majority if the salesman had merely taken the vehicle and disposed of it without obtaining the title documents. Such activity would be within the scope of the language inserted in the policy and preclude recovery. However, that is not the factual situation in this case. The employee's activity in this case is simply a theft. First, the employee drove the car off the plaintiff's lot without any representation that he was doing something other than his job. Second, when the employee sold the stolen cars, he was able to deliver the title documents for each vehicle. In order to obtain the title documents, the employee had to enter a secured area in the employer's premises, to which he was not given access, and steal them. The title documents allowed the employee to obtain a higher price for the stolen cars than he would otherwise have received. This activity did not depend for its success on a trick, scheme, or false representation made to the plaintiff. The majority opinion totally ignores the fact that it was the theft of the title documents which was the mechanism which transferred the salesman's possession of the vehicle into a merchantable item and effected the conversion of the property, a covered loss under the policy.

I would hold that the plaintiff in this case, given the context of his business and attributing to the contract language its ordinary meaning, did not part with the automobiles. In addition, I would hold that the manner in which the cars were obtained by the employee was a theft rather than a trick, scheme, or false pretense. Therefore, I would reverse the district court and order judgment for the plaintiff.

WAHL, Justice.

I join in the dissent of Justice Todd.

SCOTT, Justice.

I join in the dissent of Justice Todd.