(No. 97481.—
(No. 98309.—

LULA HOBBS, Appellee, v. HARTFORD INSURANCE COMPANY OF THE MIDWEST, Appellant.–LEE ANN ANHEUSER *et al.*, Appellees, v. PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, Appellant.

*Opinion filed January 21, 2005.*

12

Hinshaw & Culbertson (Mark D. Bauman and Nancy G. Lischer, of counsel), and Cutler & Hull (David P. Cutler and Edwin J. Hull III, of counsel), all of Chicago, for appellant.

Joseph E. Hoefert, of Hoefert & Perica, P.C., of Alton, and Curtis L. Blood, of Collinsville, for appellee.

Pretzel & Stouffer, Chrtd., of Chicago (Robert Marc Chemers and Richard R. Gordon, of counsel), for *amici curiae* The Farmers Automobile Insurance Association *et al.*

Howerton, Dorris & Stone, of Marion, for *amicus curiae* Linda Lang.

Heyl, Royster, Voelker & Allen (Karen L. Kendall and Craig L. Unrath, of Peoria, and Kent L. Plotner and John C. Craig, of Edwardsville, of counsel), for appellant.

Robert H. Howerton, of Howerton, Dorris & Stone, of Marion, for appellees.

JUSTICE FITZGERALD delivered the opinion of the court:

At issue in these consolidated appeals is whether an insured may "stack," *i.e.*, aggregate, the limits of liability for underinsured-motorist coverage where multiple vehicles are covered under one policy. The lower courts determined that the policies at issue were ambiguous and must be construed in favor of the insureds to permit stacking. We reverse.

## BACKGROUND

No. 97481—Hobbs v. Hartford Insurance Company

In June 2000, plaintiff Lula Hobbs was involved in a motor vehicle accident, allegedly sustaining injuries and damages in excess of $200,000. Hobbs settled claims against the driver of the other vehicle for the driver's

policy limits of $50,000. At the time of the accident, Hobbs carried underinsured-motorist coverage for two vehicles under a single policy issued by Hartford Insurance Company of the Midwest (Hartford), in the amount of $100,000 per person, $300,000 per occurrence. Pursuant to the underinsured-motorist coverage, Hartford tendered to Hobbs a check in the amount of $50,000. This amount represented the difference between the $100,000 per person underinsured-motorist coverage afforded under Hobbs' policy and the $50,000 Hobbs received from the other driver's insurer. Hobbs maintained, however, that she was entitled to an additional sum from Hartford and, in February 2002, filed a declaratory judgment action in the circuit court of Madison County. In her subsequent motion for summary judgment, Hobbs argued that the Hartford policy was ambiguous as to the limits of underinsured-motorist coverage and that she should be allowed to stack the underinsured-motorist coverage for the two vehicles, thus producing a per-person limit of $200,000. In its cross-motion for summary judgment, Hartford countered that the policy contained unambiguous antistacking language and that the underinsured-motorist bodily injury limit was $100,000 per person. The trial court found that the declarations page of the Hartford policy contained language inconsistent with and contradictory to the antistacking provisions, creating an ambiguity that must be construed in favor of Hobbs to permit stacking. Thus, the trial court declared that the underinsured-motorist bodily injury limit was $200,000 per person. The appellate court affirmed. *Hobbs*, No. 5—02—0429 (unpublished order under Supreme Court Rule 23). We allowed Hartford's petition for leave to appeal. See 177 Ill. 2d R. 315.

No. 98309—Anheuser v. Prudential Property
& Casualty Insurance
In September 1999, Lee Ann Anheuser was involved

in a motor vehicle accident. The car she was driving was owned by her or her parents, Richard and Shirley Anheuser. The Anheusers filed a personal injury and property damage suit in the circuit court of Franklin County against the other driver, Dana Sample, which was eventually settled for Sample's policy limits of $100,000. The Anheusers then sought underinsured-motorist coverage under an auto policy issued by Prudential Property and Casualty Insurance Company (Prudential) to Richard Anheuser. The Prudential policy covered three vehicles, including the one involved in the accident. A dispute arose as to the amount of underinsured-motorist coverage and, on motion of the Anheusers, their complaint was amended to name Prudential as a defendant. Sample was later dismissed with prejudice, and the case proceeded against Prudential. The parties filed cross-motions for summary judgment.

Prudential maintained that the bodily injury limits under Sample's policy were equal to the underinsured-motorist benefits under the Anheusers' policy: $100,000 per person. Therefore, according to Prudential, Sample was not an "underinsured" motorist and underinsured-motorist benefits were not available to the Anheusers. Prudential also maintained that the policy prohibited stacking of underinsured-motorist coverage. The Anheusers argued that the Prudential policy was ambiguous as to the limits of underinsured-motorist coverage and that stacking should be permitted to determine whether Sample was underinsured. The trial court ruled that the declarations page of the policy contained language creating an ambiguity that the antistacking clause in the policy could not cure. The trial court ruled in favor of the Anheusers and declared that the underinsured-motorist bodily injury limits were $300,000 per person. We allowed Prudential's motion for a direct appeal to this court (see 134 Ill. 2d R. 302(b)), and consolidated this case with the Hobbs appeal for review.

## ANALYSIS

The salient facts in each case are not in dispute. The Hartford and the Prudential policies each provide some measure of underinsured-motorist coverage. The only issue is whether these policies, properly construed, prohibit or permit stacking of underinsured-motorist coverage. On this legal issue our review proceeds *de novo*. See *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80 (1997); *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 223 (1995).

An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies. *Dempsey v. National Life & Accident Insurance Co.*, 404 Ill. 423, 426 (1949); see also *Maremont Corp. v. Continental Casualty Co.*, 326 Ill. App. 3d 272, 276 (2001); *Pekin Insurance Co. v. Willett*, 301 Ill. App. 3d 1034, 1037 (1998). Accordingly, our primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language. *American States Insurance Co.*, 177 Ill. 2d at 479. If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy. *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 423 (1980). Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation. Although "creative possibilities" may be suggested, only reasonable interpretations will be considered. *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993). Thus, we will not strain to find an ambiguity where none exists. *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497 (1999). Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous. *Menke*, 78 Ill. 2d at 424.

This court has determined that antistacking clauses

in general do not contravene public policy. *Grzeszczak*, 168 Ill. 2d at 229. Moreover, the Illinois Insurance Code expressly authorizes the use of antistacking provisions in motor vehicle insurance policies. 215 ILCS 5/143a—2(5) (West 2002). Thus, if the antistacking clauses at issue in these cases are unambiguous, they will be given effect. See *Grzeszczak*, 168 Ill. 2d at 230.

Because the Hartford and Prudential policies do not contain identical antistacking language, we examine each policy separately.

## Hartford Policy

Hartford identifies three provisions in the policy issued to Hobbs which it argues unambiguously prohibit stacking of underinsured-motorist coverage. We agree with Hobbs that two of the provisions are inapplicable to the present dispute and we need not review them here. We turn our attention to the remaining antistacking provision identified by Hartford, which reads in relevant part:

"LIMIT OF LIABILITY

The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. \*\*\* This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident."

The "Declarations," referenced in the "Limit of Liability" provision quoted above, lists the coverages, the limits of liability, and the premiums by auto as follows:

"COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN FOR THE AUTO AND COVERAGE

| COVERAGES AND LIMITS OF LIABILITY | | | PREMIUMS BY AUTO | |
|---|---|---|---|---|
| | | | 1 | 2 |
| A. Liability | | | | |
| Bodily Injury | Each Person | $100,000 | $137.00 | 64.00 |
| | Each Accident | $300,000 | $105.00 | 49.00 |
| Property Damage | Each Accident | $ 50,000 | | |
| B. Medical Payments | Each Person | $ 25,000 | $ 38.00 | 29.00 |
| C. Uninsured Motorists | | | | |
| Bodily Injury | Each Person | $100,000 | | |
| | Each Accident | $300,000 | $ 29.00 | 29.00 |
| Property Damage | Each Accident | $ 15,000 | $ | 14.00 |
| Underinsured Motorists | | | | |
| Bodily Injury | Each Person | $100,000 | | |
| | Each Accident | $300,000 | $INCL | INCL" |

Relying principally on *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179 (1993), Hartford argues that the "Limit of Liability" provision, when read in conjunction with the declarations page of the policy, unambiguously prohibits stacking and limits underinsured-motorist bodily injury coverage to $100,000 per person. Although we agree that *Bruder* is relevant, it is not entirely dispositive of the issue before this court.

In *Bruder*, the plaintiffs insured two vehicles under a single policy that contained the following antistacking clause:

" 'The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury shown in the declarations for "Each Person." ' " *Bruder*, 156 Ill. 2d at 189.

The declarations page, in turn, listed the two vehicles covered under the policy and set forth the coverages, limits of liability and premiums. The information was arranged in columns, with the types of coverage (bodily injury, property damage, etc.) appearing as column head-

ings, and the corresponding premiums listed below the headings. Directly below the bodily injury column heading, two premiums were listed, one for each vehicle. The bodily injury limit of liability for "Each Person"—$100,000—appeared once above the bodily injury column heading.

The Bruders argued that the declarations page was ambiguous because it could be construed in three possible ways: the limit of liability could be read twice, once for each vehicle, resulting in an aggregation of $200,000 of coverage; or the limit of liability could be read as the total amount available for either or both of the vehicles, resulting in $100,000 of coverage; or the limit of liability could be read as an amount that was to be proportionally decreased by the number of vehicles, resulting in $50,000 of coverage.

We rejected the Bruders' argument, holding that the declarations page was subject to only one reasonable interpretation. *Bruder*, 156 Ill. 2d at 193. Although two entries appeared in the bodily injury column for the premiums for each of the two vehicles, the $100,000 per person bodily injury limit was noted only once on the page. *Bruder*, 156 Ill. 2d at 192-93. "The only reasonable interpretation is that the policy provides only $100,000 of liability for bodily injury occasioned to each person insured no matter how many vehicles are listed in the column arrangement and no matter how many premiums are paid." *Bruder*, 156 Ill. 2d at 193-94. We found the representation of the limit of liability for bodily injury consistent with the antistacking provision and consistent with other policy language indicating that the antistacking provision would apply regardless of the number of covered vehicles. *Bruder*, 156 Ill. 2d at 194. We thus reversed the appellate court's determination to permit stacking. "Because there is no ambiguity in the limitation of liability provision, the provision must be applied

as written." *Bruder*, 156 Ill. 2d at 194. We noted, however, that had the limit of liability for bodily injury been listed twice on the declarations page, "[i]t would not be difficult to find an ambiguity." *Bruder*, 156 Ill. 2d at 192. In such a case, the policy could easily be interpreted as providing a total limit of $200,000 because a figure of $100,000 would be shown for each vehicle. *Bruder*, 156 Ill. 2d at 192.

The similarities between the instant case and *Bruder* are apparent. The antistacking clause in the Hartford policy at issue here, like the antistacking clause in *Bruder*, ties the limit of liability to the limit shown in the declarations page. The declarations page here, like the declarations page in *Bruder*, lists the premiums for the two vehicles separately, but, importantly, lists the relevant limit of liability only once. In addition, the Hartford policy, like the policy in *Bruder*, indicates that the antistacking provision applies regardless of the number of covered vehicles. Hartford thus argues that, in line with *Bruder*, the antistacking clause and the declarations page in the policy issued to Hobbs are consistent and are capable of only one reasonable interpretation: that the underinsured-motorist bodily injury limit is $100,000 per person, no matter how many vehicles are covered or premiums paid.

All other considerations aside, we agree with Hartford that, pursuant to our holding in *Bruder*, underinsured-motorist coverage under Hobbs' policy cannot be stacked. Indeed, since *Bruder* was decided, our appellate court has examined antistacking language virtually identical to the antistacking clause here, in combination with a declarations page substantially similar to the declarations page here. See *Domin v. Shelby Insurance Co.*, 326 Ill. App. 3d 688 (2001). Following *Bruder*, *Domin* held that the policy was unambiguous: stacking was not allowed. *Domin*, 326 Ill. App. 3d at 697.

The present case, however, is distinguishable from *Bruder* and *Domin* in one respect. Hobbs' argument that the Hartford policy is ambiguous rests on policy language that was not addressed in *Bruder* and *Domin*. The language to which Hobbs refers appears on the declarations page directly above the coverages, limits of liability, and premiums. It reads: "COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN FOR THE AUTO AND COVERAGE." Hobbs argues that this language, together with the notation "INCL," in the space for the underinsured-motorist premium, might be read as providing underinsured-motorist coverage once, twice, or not at all.

The appellate court, relying on *Yates v. Farmers Automobile Insurance Ass'n*, 311 Ill. App. 3d 797 (2000), and *Hall v. General Casualty Co. of Illinois*, 328 Ill. App. 3d 655 (2002), agreed with Hobbs, stating in relevant part:

"We find the following language on the declarations page, 'COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN FOR THE AUTO AND COVERAGE,' in combination with the abbreviations 'INCL' for each vehicle under the column titled 'PREMIUMS BY AUTO,' contradicts the antistacking provision(s) in the policy. The notation 'INCL' is not defined or explained either in the policy or on the declarations page. When the language is considered as a whole, *it leaves the reader asking whether there is [underinsured-motorist] coverage at all, and if so, how much*. Because the declarations page is the source of the ambiguity here, it is not necessary for us to pass on whether any or all of the three provisions of the policy that purport to prohibit stacking are unambiguous." (Emphasis added.) *Hobbs*, No. 5—02—0429 (unpublished order under Supreme Court Rule 23).

First, we note that "whether there is [underinsured-motorist] coverage at all" has never been an issue in this case. As Hobbs' complaint and motion for summary judgment make plain, the issue has always been whether

underinsured-motorist coverage may be stacked. The issue of whether coverage may be stacked arises only because the existence of coverage is a given. *Bruder*, 156 Ill. 2d at 187. Thus, we consider only whether the policy is ambiguous as to the extent of underinsured-motorist coverage, not the existence of underinsured-motorist coverage.

Second, the statement on the declarations page that "COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN FOR THE AUTO AND COVERAGE" does not, under any reasonable reading, contradict the antistacking clause. This statement simply informs the policyholder which coverages are applicable to each auto. The fact that coverage is provided does not somehow imply that coverage limits may be stacked. At most, the statement that "COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN FOR THE AUTO AND COVERAGE" leaves open the question of stacking. This does not mean that the policy is ambiguous. The declarations page of an insurance policy is but one piece of the insuring agreement. See 1 Holmes's Appleman on Insurance 2d § 4.4 (1996). Although it contains important information specific to the policyholder, the declarations page cannot address every conceivable coverage issue. Thus, some uncertainty could arise if the declarations page is read in isolation from the rest of the agreement. This is precisely why an insurance policy must be interpreted from an examination of the complete document. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 50 (1987). As our appellate court observed:

> "Any provision of a lengthy document is bound to be ambiguous in the sense that it creates questions that can be answered only with reference to other portions of the document. That is why all provisions of an insurance policy must be construed together." *In re Estate of Striplin*, 347 Ill. App. 3d 700, 706 (2004).

Here, the statement in the declarations page that

"COVERAGE IS PROVIDED ONLY WHERE A PRE-MIUM IS SHOWN FOR THE AUTO AND COVERAGE" does not answer the question of whether underinsured-motorist coverage may be stacked. The unambiguous answer, however, is found elsewhere in the policy. Under the "Limit of Liability" clause, underinsured-motorist coverage may not be stacked.

The appellate court also focused on the notation "INCL" which, in lieu of a dollar amount, appears in the space for the underinsured-motorist premium. Hartford explains that no separate dollar amount is listed for underinsured-motorist coverage because the premium is "included," which is reflected in the abbreviation "INCL." To the extent this notation is unclear, it would raise an ambiguity only as to the existence of coverage— not whether coverage could be stacked. That is, since "COVERAGE IS PROVIDED ONLY WHERE A PRE-MIUM IS SHOWN," and it might be unclear whether "INCL" constitutes a premium, underinsured-motorist coverage might be in question. But as already noted, the existence of underinsured-motorist coverage has never been at issue. Hartford tendered a $50,000 check to Hobbs pursuant to the underinsured-motorist coverage. The only dispute is whether Hobbs is entitled to stack coverage, thereby increasing Hartford's liability. "INCL" does not speak to that issue.

Further, we disagree with Hobbs that *Yates v. Farmers Automobile Insurance Ass'n*, 311 Ill. App. 3d 797 (2000), and *Hall v. General Casualty Co. of Illinois*, 328 Ill. App. 3d 655 (2002), on which the appellate court relied, provide persuasive authority for permitting stacking of underinsured-motorist coverage in this case.

In *Yates*, the policy covered two vehicles and contained an antistacking clause similar to the one at issue here limiting underinsured-motorist coverage to the limit of liability shown in the declarations page. The declarations

page, in turn, identified the two vehicles covered. In the row corresponding to underinsured-motorist coverage, the policy limits were listed under "auto one" and "auto two," along with the premium applicable to each auto. The declarations page also contained the following statement: " 'COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY OR THE WORD "INCLUDED" ARE SHOWN FOR COVERAGE.' " *Yates*, 311 Ill. App. 3d at 800. The appellate court held that the declarations page was inconsistent with and contradictory to the antistacking provision and construed the policy in favor of the insured to permit stacking of underinsured-motorist coverage. *Yates*, 311 Ill. App. 3d at 799-800.

The declarations page in *Yates* was arranged differently than the one at issue here. Rather than listing the limit of underinsured-motorist coverage once as the Hartford policy does, the declarations page listed the underinsured-motorist limits twice—once for each of the two covered vehicles. Although the appellate court in the instant case found this factual distinction immaterial, we do not. As noted above in our discussion of *Bruder*, where the antistacking clause limits liability to the limit shown on the declarations page, and the declarations page lists the limit of liability twice, it would not be difficult to find an ambiguity. *Bruder*, 156 Ill. 2d at 192. In the absence of other qualifying language in the antistacking clause, "[t]here would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two [vehicles]." *Bruder*, 156 Ill. 2d at 192.

Under *Bruder*, the policy at issue in *Yates* was ambiguous irrespective of the statement in the declarations page that "coverage is provided where a premium and a limit of liability *** are shown." Thus, *Yates* did not clearly examine the effect, if any, of the foregoing

statement on the insurer's limit of liability, and does not provide a reasoned basis for holding that the statement at issue in this case must be construed to permit stacking.[1]

In *Hall*, the policy covered two vehicles and contained an antistacking clause substantially similar to the antistacking clause in the Hartford policy. The antistacking clause, which plaintiff Hall conceded was unambiguous, provided that the limit of liability for bodily injury was the limit shown in the declarations page. That limit was the most the insurer would pay regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations, or vehicles involved in the auto accident. The declarations page, in turn, listed the bodily injury limit as $250,000 per person and $500,000 per accident. Like the present declarations page, the declarations page in *Hall* listed a separate bodily injury premium for each of the two vehicles covered under the policy, but listed the limit of liability only once. The declarations page in *Hall* also contained the following statement, which is similar to the statement at issue here: " 'INSURANCE IS PROVIDED WHERE A PREMIUM IS SHOWN.' " *Hall*, 328 Ill. App. 3d at 657. Citing *Yates*, the appellate court held that the foregoing statement was "directly contradictory" to the antistacking clause, creating an ambiguity that must be construed to permit stacking. *Hall*, 328 Ill. App. 3d at 660. Generally, the appellate court reasoned that because "insurance is provided where a premium is shown," and a second premium was shown for the second vehicle covered under the policy,

---

[1]Our discussion of *Bruder* and *Yates* should not be construed as establishing a *per se* rule that an insurance policy will be deemed ambiguous as to the limits of liability anytime the limits are noted more than once on the declarations. Variances in policy language and, in particular, antistacking clauses, frequently require case-by-case review. See generally 24 Holmes's Appleman on Insurance 2d § 150.1 (2004) (discussing various types of antistacking clauses).

the declarations page could reasonably be construed to provide twice as much coverage, *i.e.*, $500,000 per person, and $1 million per accident. *Hall*, 328 Ill. App. 3d at 661.

We decline to follow *Hall*. The statement "insurance is provided where a premium is shown" does not address the issue of stacking and cannot reasonably be read as "directly contradictory" to the antistacking clause. Even if it raised the specter that coverage could be stacked—and we do not believe it does—the policy must be construed as a whole. *Zurich Insurance Co.*, 118 Ill. 2d at 50. The interpretation adopted in *Hall*, however, reads the antistacking clause completely out of the policy. See *Grinnell Select Insurance Co. v. Baker*, 362 F.3d 1005 (7th Cir. 2004) (declining to follow *Yates* and *Hall*, holding that an unambiguous antistacking clause would be enforced). *Hall* was wrongly decided, and it is hereby overruled.

We conclude that, under *Bruder* and *Domin*, the antistacking clause in the Hartford policy unambiguously limits coverage to $100,000 per person, regardless of the number of vehicles or premiums shown on the declarations, and that the statement "COVERAGE IS PROVIDED ONLY WHERE A PREMIUM IS SHOWN FOR THE AUTO AND COVERAGE" does not create an ambiguity as to Hartford's limit of liability. The antistacking clause will be enforced as written. See *Grzeszczak*, 168 Ill. 2d at 230. Accordingly, we reverse the judgments of the appellate court and the trial court permitting stacking of underinsured-motorist coverage.

Prudential Policy

As described above, the dispute between the Anheusers and Prudential involves whether the other driver, Dana Sample, was "underinsured." If the Prudential policy is construed to permit stacking, then the Anheusers' policy limits will increase to $300,000, thus exceeding Sample's policy limits of $100,000, and

underinsured-motorist coverage becomes available. Conversely, if the antistacking clause in the Prudential policy is enforced, the limits under Sample's policy and the Anheusers' policy will be equal and underinsured-motorist coverage will not be available.

The antistacking clause appears in the "General Provisions" of the Prudential policy and reads in relevant part as follows:

"LIMIT OF COVERAGE:

If you or any other person insured under this policy is in an accident:

1. In a car that is insured by this policy—We will not pay more than the limit of coverages for that particular car.

\* \* \*

This limit of coverage applies regardless of the number of policies, insureds, insured cars, claims made, or cars involved in the accident or loss. Coverages on other cars insured by us cannot be added to or stacked on the coverage of the particular car involved."

In addition, part 4 of the Prudential policy, which is specifically applicable to uninsured and underinsured motorists, states that the limit of liability is the limit shown on the declarations. The declarations consist of four pages. Page 3 lists the coverage, limits, and premiums for each of the three vehicle covered by the Prudential policy. The arrangement of this information is similar to that found in the declarations page in the Hartford policy set forth above. The type of coverage (bodily injury, property damage, uninsured motorists, etc.) appears at the left margin, with the limits of each coverage to the right. To the far right are three columns, listing the corresponding premiums for each vehicle for each type of coverage as a dollar amount. (The abbreviation "INCL" is not used.) Above this arrangement, the following statement appears: "If a premium charge does not appear, that coverage is not provided."

The trial court, relying on *Hall v. General Casualty Co. of Illinois*, 328 Ill. App. 3d 655 (2002), ruled that the declarations page was ambiguous and would be construed to permit stacking. As already discussed, *Hall* was wrongly decided, and we need not consider it here.

Although the policy language in the Prudential policy is not identical to the language in the Hartford policy, the analysis is the same. Under any reasonable reading, the statement "If a premium charge does not appear, that coverage is not provided" does not suggest—one way or the other—the answer to the question of whether coverage may be stacked. The answer, however, is found in the unambiguous antistacking clause: "Coverages on other cars insured by us cannot be added to or stacked on the coverage of the particular car involved."

The Anheusers argue that this antistacking clause, found in the "General Provisions" of the policy, cannot override the more specific underinsured-motorist provisions found in part 4 of the policy. See *Willison v. Economy Fire & Casualty Co.*, 294 Ill. App. 3d 793, 800 (1998). According to the Anheusers, under part 4 of the policy the underinsured-motorist coverage limit is $300,000 per person. We disagree.

The policy provisions in part 4 do not refer to the coverage limits or Prudential's limit of liability as a dollar amount. Rather, as already noted, the policy states that Prudential's limit of liability for underinsured-motorist coverage is the limit shown on the declarations. The declarations, like the ones at issue in *Bruder* and *Domin*, as well as the Hartford policy discussed above, lists the $100,000 per person underinsured-motorist limit once. The only reasonable reading is that the policy provides $100,000 of underinsured-motorist coverage. Thus, the antistacking clause in the "General Provisions" and the more specific language in part 4 of the policy are consistent.

The Anheusers also argue that pursuant to the statement "We will not pay more than the limit of coverages for that particular car," found in the "Limit of Coverage" clause quoted above, all the coverages for a particular vehicle may be stacked—even those coverages not implicated by the facts of the case. Thus, for the auto involved in this accident, the Anheusers suggest stacking the $100,000 bodily injury limit with the $50,000 property damage limit, the $5,000 medical payment limit, and the $100,000 underinsured-motorist limit, resulting in $255,000 of coverage. According to the Anhesuers, this result is warranted because the "Limit of Coverage" clause does not stipulate that coverage is limited by the facts of the case.

This argument was not raised in the Anheusers' motion for summary judgment and a transcript of the hearing on that motion is not contained in the record. Assuming the Anheusers did not forfeit review of this argument, we reject it. "The touchstone in determining whether ambiguity exists regarding an insurance policy *** is whether the relevant portion is subject to more than one reasonable interpretation [citation], not whether creative possibilities can be suggested." *Bruder*, 156 Ill. 2d at 193. The Anheusers' reading of the "Limit of Coverage" clause falls in the realm of "creative possibilities."

The Anheusers further argue that the same statement ("We will not pay more than the limit of coverages for that particular car") can be read to allow stacking of underinsured-motorist limits for all three vehicles covered by the policy, producing a per-person limit of $300,000. Again, this is not a reasonable interpretation. If Prudential's payment is limited to the coverage applicable to the "particular car," then stacking of coverage applicable to three cars is prohibited.

Where an ambiguity in an insurance policy is found,

we will construe it in favor of the insured. We will not, however, "torture ordinary words until they confess to ambiguity." *Western States Insurance Co. v. Wisconsin Wholesale Tire, Inc.*, 184 F.3d 699, 702 (7th Cir. 1999). The antistacking clause will be enforced as written. See *Grzeszczak*, 168 Ill. 2d at 230.

The judgments of the appellate and circuit courts in No. 97481 are reversed; the judgment of the circuit court in No. 98309 is reversed.

*No. 97481—Judgments reversed.*

*No. 98309—Judgment reversed.*