JOE COTTON FORD, INC., Plaintiff-Appellant, v. ILLINOIS EMCASCO INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)    No. 1—07—1978

Opinion filed April 30, 2009.

Williams, Montgomery & John, Ltd., of Chicago (Steven J. Roeder and Alyssa M. Campbell, of counsel), for appellant.

Judge, James & Kujawa, LLC, of Park Ridge (Jay S. Judge and Andrew G. Witik, of counsel), for appellee.

JUSTICE STEELE delivered the opinion of the court:

Plaintiff Joe Cotton Ford, Inc. (Cotton), appeals an order of the circuit court of Cook County granting summary judgment to defendant Illinois Emcasco Insurance Company (EIC) in a declaratory judgment action. For the following reasons, we affirm.

## BACKGROUND

The record on appeal shows that Cotton owns and operates an automobile dealership in Carol Stream, Illinois. On September 1, 2003,

Cotton's dealership manager, Ron Drendel, admitted that over a period of several years he had removed trade-in cars from the lot for his own benefit. Drendel concealed these activities by failing to update Cotton's inventory records. Cotton reported Drendel to the Federal Bureau of Investigation and Internal Revenue Service. In December 2004, Drendel was charged with mail fraud and tax evasion. In January 2005, Drendel entered into a plea agreement, admitting that he transferred possession and titles of approximately 75 vehicles with an estimated value of approximately $1,244,796 to two vendors, arranging for the proceeds to be deposited into accounts he controlled.

On January 3, 2005, Cotton filed its complaint against EIC for a declaratory judgment and other relief. EIC issued a business protection policy to Cotton for the period of October 1, 2002, through October 1, 2003. Cotton sought a declaration that EIC had a duty to indemnify Cotton for its loss under the "Physical Damage" coverage section of the policy, which provides that EIC will pay for a loss to covered autos caused by theft, up to a limit of $2,750,000. Cotton also claimed that EIC breached the contract and its refusal to pay constituted vexatious and unreasonable conduct.

On July 14, 2006, EIC filed a motion for summary judgment, arguing that Cotton's claims were barred by the "False Pretense Exclusion" to the Physical Damage coverage of the policy, which provides as follows:

"**B. Exclusions**

\* \* \*

**3. False Pretense**
    We will not pay for a "loss" to a covered "auto" caused by or resulting from:
    a. Someone causing you to voluntarily part with it by trick or scheme or under false pretenses \* \* \*."

EIC also noted that Cotton purchased coverage for a "False Pretense Coverage with Deductible" endorsement, which had a $100,000 limit, with a $500 deductible per claim.

On June 19, 2007, following briefing and a hearing, the circuit court granted summary judgment in EIC's favor, finding the False Pretense Exclusion applied. However, the court declined to rule on whether Cotton could seek payment under the False Pretense Coverage with Deductible endorsement. The circuit court entered a written order memorializing the ruling the next day, as well as an order finding no just reason to delay appeal or enforcement of the ruling. On July 18, 2007, Cotton filed a timely notice of appeal to this court.

## DISCUSSION

Cotton argues that the trial judge erred in granting summary judgment to EIC. Appellate review of a summary judgment is *de novo. Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 146, 787 N.E.2d 786, 789 (2003). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2006). The interpretation of an insurance policy and the coverage provided are questions of law that are appropriate for resolution through summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (1993).

The primary function of the court in construing an insurance policy is to determine and enforce the parties' intent as expressed in the agreement. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078. "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078.

If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005). Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation. *Hobbs*, 214 Ill. 2d at 17, 823 N.E.2d at 564. The court will not search for ambiguities where none exist. *Hobbs*, 214 Ill. 2d at 17, 823 N.E.2d at 564. Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous. *Hobbs*, 214 Ill. 2d at 17, 823 N.E.2d at 564.

Turning to the language of the policy, we first note that on appeal, Cotton does not challenge the ruling of the circuit court that Drendel is "someone" separate from Cotton as "you" under the terms of the False Pretense Exclusion. We note in passing that the trial court based this aspect of its ruling on the definition of "you" as the "Named Insured" at the outset of the "Garage Coverage Form." We add that the policy occasionally refers to "your employees" as part of defining who is an insured under other coverages in the policy (suggesting that the two are not identical), though not the coverage at issue in this

case. Indeed, in the "Garagekeepers Coverage," which addresses autos left in Cotton's care for service or storage, the policy expressly excludes " '[l]oss' due to theft or conversion caused in any way by you, your 'employees' or by your shareholders."

Instead, Cotton focuses on the other contention it raised in the trial court, *i.e.*, that a genuine issue of material fact exists as to whether Drendel caused Cotton to "voluntarily part" with each of the autos Drendel converted. The parties agree that there is no Illinois case directly addressing the interpretation of the false pretenses exclusion language here in the context of employee conversion. Accordingly, we may look to the determinations of the courts of foreign jurisdictions to provide persuasive authority for our analysis of the issue. See, *e.g.*, *In re Estate of Zenkus*, 346 Ill. App. 3d 741, 746, 805 N.E.2d 1257, 1261 (2004).

The circuit court was persuaded in part by the Minnesota Supreme Court decision in *Bjorklund v. Aetna Casualty & Surety Co.*, 306 N.W.2d 838 (Minn. 1981). In that case, the court determined that a loss occasioned by the felonious conversion and sale of a dealer's vehicles by an employee was expressly excluded by language substantially identical to the false pretenses exclusion at issue in this case:

> "We are of the opinion that there is no ambiguity in the language of this policy and that it was the clear intent of the parties that coverage be excluded if the employer was induced to voluntarily part with its vehicles on the false pretense of an employee that he intended to service them whereas his actual purpose was to convert them to his own use." *Bjorklund*, 306 N.W.2d at 839.

Cotton, noting that the case was decided by a 4 to 3 vote, argues that *Bjorklund* is factually distinguishable and incorrectly decided under principles inconsistent with Illinois law. In particular, Cotton notes that the employee in *Bjorklund* stole the titles, to which he did not have access as part of his job. Cotton further notes that the dissenting justices found this fact highly significant. See *Bjorklund*, 306 N.W.2d at 840 (Todd, J., dissenting, joined by Wahl and Scott, JJ.).

Justice Todd's dissent is also instructive on this point:

> "The policy language is clear it excludes a loss caused when someone induces the insured to part with a covered automobile by some trick or false representation. I would agree with the majority if the salesman had merely taken the vehicle and disposed of it without obtaining the title documents. Such activity would be within the scope of the language inserted in the policy and preclude recovery. However, that is not the factual situation in this case. The employee's activity in this case is simply a theft. First, the employee drove the car off the plaintiff's lot without any representation that he was doing something other than his job. Second,

when the employee sold the stolen cars, he was able to deliver the title documents for each vehicle. In order to obtain the title documents, the employee had to enter a secured area in the employer's premises, to which he was not given access, and steal them. The title documents allowed the employee to obtain a higher price for the stolen cars than he would otherwise have received. This activity did not depend for its success on a trick, scheme, or false representation made to the plaintiff. The majority opinion totally ignores the fact that it was the theft of the title documents which was the mechanism which transferred the salesman's possession of the vehicle into a merchantable item and effected the conversion of the property, a covered loss under the policy." *Bjorklund*, 306 N.W.2d at 840 (Todd, J., dissenting, joined by Wahl and Scott, JJ.).

In this case, unlike *Bjorklund*, Drendel did not steal titles to the autos. He removed the autos and titles from the lot, with the authority to do both. As the circuit court noted in its written ruling, even the affidavit of Tracy Conn, Cotton's finance and insurance manager, stated that Drendel had primary responsibility for the sale of Cotton's used autos and the general authority to take whatever lawful measures were necessary to sell used autos and their titles, so long as his actions benefitted Cotton. Drendel's ongoing activities depended on a scheme and false representations made to Cotton. Thus, this case falls more squarely within the policy exclusion than the *Bjorkland* case.

More broadly, the language of a false pretenses exclusion applies whenever the insured, or anyone acting for the insured with express or implied authority to do so, voluntarily parts with possession of a vehicle covered thereby. See *Nelson v. Pennsylvania Fire Insurance Co.*, 154 Neb. 199, 201, 47 N.W.2d 432, 433 (1951). The exclusion typically applies to cases in which someone poses as a prospective customer who never returns from a test drive, or someone "pays" for an auto with a bad check. However, the exclusion applies equally to this case, where Drendel voluntarily parted with the cars, but embezzled the sales proceeds after the fact by trick, scheme or false pretenses.

Cotton argues that EIC should be required to prove that Drendel caused Cotton to part with each of the covered autos. This is no more necessary than it would be to require that the EIC policy *covered* each of the autos involved. Cotton points to no genuine issue of material fact disputing Drendel's authority to sell each of the autos and Drendel's scheme *regarding all* of the autos at issue. Drendel's ongoing deception caused Cotton to voluntarily part with each of the autos at the time they were sold, with Drendel wrongly taking the proceeds and concealing his wrongdoing after the fact.

Cotton further argues that misplaced trust in Drendel cannot form the basis of a voluntary parting. This argument overlooks the fact that misplaced trust is also at the heart of the classic cases to which the exclusion applies. A dealer who hands the keys for an auto to someone posing as a prospective customer for a test drive may find the trust in that person to be misplaced. A dealer who accepts a check as payment that is later discovered to be forged or drawn on an empty account has misplaced its trust in the supposed customer. In this case, Cotton misplaced its trust in Drendel, who held himself out as a loyal and honest employee. The result was that Drendel was vested with authority to voluntarily part with the autos at issue.

Cotton notes that some other policies with false pretenses exclusions expressly refer to noncoverage of loss from false pretenses *or* embezzlement, conversion or theft by any employee entrusted with custody or possession of an auto. See, *e.g.*, *Waters Motor Co. v. Grain Dealers Mutual Insurance Co.*, 12 Wis. 2d 231, 234, 107 N.W.2d 129, 130 (1961). Cotton also notes that the garage coverage in the EIC policy expressly excludes loss "due to theft or conversion caused in any way by you, your 'employees' or by your shareholders." However, the issue here is whether the False Pretense Exclusion that *does* appear in the EIC policy clearly and unambiguously applies to the facts established by the record on appeal. The language of the False Pretense Exclusion here may be more broad than in other policies, but that does not make the language ambiguous. Accordingly, the trial court did not err in granting summary judgment to EIC.

## CONCLUSION

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

O'BRIEN, P.J., and NEVILLE, J., concur.