**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220203-U

Order filed May 2, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| LAYKO PROPERTIES, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-22-0203 |
| | ) | Circuit Nos. 14-L-80 and 18-MR-750 |
| M-OK DISTRIBUTION, INC., M-OK | ) | |
| FREIGHT LINES CORP., TERRANCE | ) | |
| O'KEEFE, and PHILLIP MICELI, | ) | Honorable |
| | ) | Robert W. Rohm, |
| Defendants-Appellees.[1] | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice Holdridge and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The court did not abuse its discretion by entering an order of full satisfaction and release of judgment.

_____

[1]We recognize that M-OK Freight Lines Corp., Phillip Miceli, and Terrance O'Keefe were not defendants in the underlying litigation, but were brought in as third parties by way of citations to discover assets. However, in case No. 18-MR-0750, the court granted summary judgment on Layko's claims to pierce the corporate veil against Miceli and O'Keefe and for successor liability against M-OK Freight. Further, the parties generally refer to M-OK Distribution, M-OK Freight, Miceli, and O'Keefe as defendants, collectively, although appellant's brief noted that M-OK Freight, Miceli, and O'Keefe were never defendants in this matter. As such, due to the circumstances of the case and the treatment by the parties, we likewise refer collectively to the M-OK entities, Miceli and O'Keefe, as defendants.

¶ 2        Plaintiff, Layko Properties (Layko), appeals the Du Page County circuit court's order

finding that the judgment it obtained had been fully satisfied. Layko argues that because it was

entitled to postjudgment contractual interest, attorney fees, expenses, and costs under the terms

of the lease, the payment of the judgment amount, along with statutory postjudgment interest was

insufficient to satisfy the judgment. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        Layko entered into a lease agreement with defendant M-OK Distribution, Inc. The lease

was executed by Terrance O'Keefe and Phillip Miceli on behalf of M-OK Distribution. Section

501 of the lease provided that any installment of rent not timely paid "shall bear interest at the

rate of percent (12%) per annum, compounded monthly, from the date when the same is due

hereunder until the same shall be paid." Section 1601 of the lease provided that:

> "Lessee further agrees to pay all costs and expenses, including reasonable
>
> attorney's fees, which may be incurred by or imposed on Lessor in enforcing this
>
> Lease or in any litigation to which Lessor may be made a party and if paid by
>
> lessor, shall be so much additional rent due on the next rent date after such
>
> payment together with interest at twelve percent (12%) per annum, compounded
>
> monthly, from the date of payment."

¶ 5        In 2014, Layko filed a verified complaint against M-OK Distribution setting forth a claim

for breach of contract premised upon M-OK Distribution's alleged default under the lease. The

complaint alleged that section 501 of the lease provided for payment of 12% interest on the

unpaid rent from the time the rent was due until it was paid. It further alleged that section 2001(i)

of the lease provided that M-OK Distribution was responsible for attorney fees incurred by

Layko in connection with the lawsuit. Layko requested damages in an amount in excess of

$132,000 for rent and expenses, interest on the unpaid rent, and attorney fees and costs of litigation.

¶ 6 M-OK Distribution failed to answer the complaint and Layko moved for a default judgment. The court granted the motion and set the matter for a hearing to prove up damages. Layko filed an affidavit providing that the amounts due to it were $138,711.13 in unpaid rent, late charges, interest, and costs related to the property, $2,337.50 in attorney fees, and $365 in court costs. The court entered judgment against M-OK Distribution for a total of $144,913.60, which was comprised of $142,211.13 for damages, $2,337.50 for attorney fees, and $365 for court costs.[2] The judgment order appears to have been submitted by Layko's counsel. It does not provide for postjudgment interest or otherwise indicate that any further interest will be incurred at the contractual rate. The judgment order likewise does not provide for or otherwise indicate additional attorney fees are part of the judgment.

¶ 7 Layko filed citations to discover assets against Miceli and O'Keefe in 2016 and against M-OK Freight in 2018. The citation against Miceli and O'Keefe indicated that the balance due was $144,913.60 plus interest. The citation against M-OK Freight indicated that the balance due was $144,813.60[3] plus interest, costs, and fees. Also in 2018, Layko filed a complaint against M-OK Freight, Miceli, and O'Keefe (case No. 18-MR-750). It sought to pierce the corporate veil against Miceli and O'Keefe and hold them liable for the judgment entered against M-OK Distribution, as well as attorney fees and pre- and postjudgment interest. Layko further sought

---

[2]We note that the sum of the numbers listed for damages, attorney fees, and court costs is $144,913.63 rather than $144,913.60; however, we state the total judgment as $144,913.60 because that is what the judgment order indicates is the total award.

[3]Although this number appears incorrect, it is listed as it was on the citation.

successor liability against M-OK Freight to hold it liable for the judgment it obtained against M-OK Distribution, as well as pre- and postjudgment interest and the costs of the action.

¶ 8 In January 2021, the court entered an order providing that Layko had a valid judgment against M-OK Distribution in the amount of $144,913.60 and was entitled to recover that amount, plus interest, accrued at the statutory rate. It further found that M-OK Freight was a successor to M-OK Distribution and thus, liable for the judgment and interest. The order also provided for Layko to file a petition for fees and costs.

¶ 9 Also in January 2021, Layko filed an application for fees and costs, seeking an order awarding it a total of $685,533, comprised of: (1) the judgment amount of $144,913; (2) postjudgment interest of $119,845, which was calculated at 9% annual interest; (3) postjudgment attorney fees of $241,822; (4) contractual interest at 12% on unpaid attorney fees and costs in the amount of $28,231; (5) postjudgment accounting fees and costs in the amount of $132,825; and (6) contractual interest at 12% on unpaid accounting fees and costs in the amount of $16,718.[4] Layko argued that it was entitled to the fees and costs based upon section 1601 of the lease, which provided for M-OK Distribution and now its successor, M-OK Freight, to indemnify it for "all costs in any litigation to which Layko may be made a party." M-OK Freight opposed the motion, arguing that the contract merged into the judgment and that section 1601 did not provide for fees and costs incurred postjudgment because those costs and fees were not incurred in enforcing the lease but rather in enforcing the judgment. Layko responded that section 1601 not only provided for fees and costs in enforcing the lease but also when Layko may be made a party to litigation. Layko argued that there was no requirement that

---

[4]We note the listed numbers do not add up to the total listed but we recite the numbers as stated in Layko's application.

it be an involuntary party to the litigation as may be the case if the provision limited recovery to situations where Layko was named as a defendant.

¶ 10    At a hearing on the application, the court noted that it did not believe section 1601 was broad enough to allow the fees and costs but ordered additional briefing. Following the additional briefing and another hearing, in May 2021, the court held that section 1601 of the lease was applicable. In doing so, and relying on *Steiner Electric Co. v. Maniscalco*, 2016 IL App (1st) 132023, the court found that the merger doctrine was inapplicable. The court then determined that the postjudgment collection and supplementary proceedings were not considered when enforcing the lease. Additionally, it determined that the language of 1601 was not ambiguous. The court further held that the language "may be made a party" was not limited to situations where Layko was made a defendant and that Layko was made a party to the supplemental proceedings, such that the provision was broad enough to cover the collection proceedings. The court noted that it had gone back and forth and that its inclination was to find that the provision did not apply. In light of that, the court noted that it was not going to make the order final and appealable. M-OK Freight noted its intention to file a motion to reconsider.

¶ 11    On June 18, 2021, an order was entered in the related matter granting summary judgment to Layko on its claims to pierce the corporate veil against Miceli and O'Keefe and for successor liability against M-OK Freight. Later in June 2021, M-OK Freight filed its motion to reconsider the court's May 2021 ruling that section 1601 was applicable and in the related matter. Layko filed a motion to consolidate that case with the instant case. In August 2021, the motion to reconsider was denied and the motion to consolidate was granted.

¶ 12    In November 2021, following comments by the court that it was not confident in its decision allowing attorney fees under section 1601 of the lease, M-OK Freight again moved the

5

court to reconsider that decision. Although the court essentially denied that motion in December 2021, it granted leave for M-OK Freight to file a motion directed at whether section 1601 was ambiguous.

¶ 13    On February 14, 2022, M-OK Freight, Miceli, and O'Keefe filed a motion in the consolidated case to authorize tender and acceptance of funds in full satisfaction of Layko's judgment. The motion sought to tender the sum of the judgment, along with statutory interest to Layko or for deposit with the court in full satisfaction of the judgment but without prejudice to the remaining claims for attorney fees, costs, and sanctions. At a hearing, Layko objected. Layko argued that the calculation of interest was in dispute because it believed that contractual interest would apply. The court stated that the payment of the judgment with statutory interest satisfied the judgment. The court denied the motion but stated that if the judgment was paid, it would stop the statutory interest and the court would enter a satisfaction of judgment. The court confirmed with Layko that it did not dispute that the calculation of the judgment with statutory interest— $246,750.14—was accurate. The full satisfaction and release of judgment was entered on February 18, 2022. Layko filed a motion to reconsider the entry of the full satisfaction and release of judgment. The motion argued that the satisfaction failed to include that it was without prejudice to Layko's claims for attorney fees, costs, and sanctions and it also assumed that the interest calculation was based on the statutory rate instead of the contractual rate. In March 2022, M-OK Freight filed a motion to reconsider the decision allowing attorney fees under section 1601, focusing on whether that provision was ambiguous.

¶ 14    Following a hearing, the court held that section 1601 was ambiguous and therefore, unenforceable. The court vacated its May 25, 2021, order and determined that Layko was not entitled to postjudgment fees and costs under section 1601 in the instant matter and was not

6

entitled to fees and costs under section 1601 in the related matter. At the hearing, the court also addressed Layko's motion for reconsideration regarding satisfaction of the judgment. The court believed the rate of interest issue was still outstanding. The court noted that if Layko believed 12% interest should apply, it should have been in the judgment. Defense counsel noted that the issue with 12% interest was in relation to its application to attorney fees and expenses and not the unpaid rent. The court believed it was 12% on the outstanding judgment and defense counsel again noted it was in regard to attorney fees. Layko did not note any disagreement with defense counsel. The court requested the pertinent provision and Layko's counsel directed the court to page two of its response to the motion to reconsider an award of fees under section 1601, which quoted section 1601 providing for 12% interest on attorney fees and costs. The court denied Layko's motion for reconsideration. Layko appeals.

¶ 15                                 II. ANALYSIS

¶ 16        Layko argues that the court erred by entering satisfaction of judgment because the lease did not merge into the judgment and it provided for contractual interest at 12% rather than statutory interest. Layko further argues that the court erred in entering satisfaction of judgment because it was entitled to postjudgment attorney fees, costs, and expenses under section 1601 of the lease.

¶ 17        "A reviewing court should reverse a trial court's decision regarding a release of judgment only where the trial court abused its discretion." *Otto Baum Co. v. Süd Family Ltd. Partnership*, 2020 IL App (3d) 190054, ¶ 21. "Once a judgment is paid in full by one or more defendants, the defendants are statutorily entitled to receive a release of the judgment." *Id.* The interpretation of a contract is reviewed *de novo*. *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007).

7

¶ 18        Here, the judgment did not provide for interest at any specified rate. Thus, on its face, payment of the judgment, along with interest at the statutory rate, satisfied the judgment as written.

¶ 19        Turning to Layko's argument regarding the application of statutory interest, although Layko includes section 501 of the lease in its statement of facts—which provides for 12% interest on late rent—and makes a passing reference to that section in its argument, it largely argues for 12% interest under section 1601 of the lease. However, section 1601 provides for 12% interest on expenses, costs and attorney fees from the date Layko paid any such expenses, costs, and attorney fees. Therefore, section 1601 does not entitle Layko to interest at 12% on its entire judgment, as it appears to argue.

¶ 20        Layko also appears to argue for 12% interest under section 501 based on its position that the lease did not merge into the judgment. Layko supports its position with the court's statement that the merger doctrine did not apply, which the court made during the hearing where it initially found section 1601 applicable. However, when taken into context, the court's statement regarding merger was in relation to section 1601, rather than the contract as a whole, because only the applicability of section 1601 was being argued during the hearing. We conclude that the lease, including section 501, generally merged into the judgment once the judgment became final.[5] See *A.L. Dougherty Real Estate Management. Co., LLC v. Su Chin Tsai*, 2017 IL App (1st) 161949, ¶ 29. ("Under the merger doctrine, once the underlying judgment became final, the lease entirely merged into the judgment, and no further action at law or equity could be maintained on the lease."); *Mason v. Eakle*, 1 Ill. 83, 83 (1824) (determining that the statutory

---

[5]We recognize that "Illinois courts have held the merger rule does not apply to ancillary attorney fees." *Steiner Electric Co. v. Maniscalco*, 2016 IL App (1st) 132023, ¶ 90.

rate of interest applied once judgment was rendered, even though the higher contractual interest rate applied to the principal up to the time judgment was rendered and explaining that "[w]hen a judgment is obtained upon a contract, that contract ceases to be, and is merged in the judgment, and the judgment is operated upon, and controlled, not by the contract, but by the statute"); *BAC Home Loans Servicing, LP v. Popa*, 2015 IL App (1st) 142053, ¶¶ 35-36 (concluding the statutory interest rate applied from the date of judgment and stating "Illinois courts have long held that, upon the entry of a foreclosure judgment, the mortgage merges into the judgment and eliminates the contract, and therefore the judgment is controlled by statute, not the contract"). As the judgment does not provide for the contractual rate of interest, the statutory rate applied post-judgment. See *e.g.*, *Centerpoint Energy Services, Inc. v. Halim*, 743 F.3d 503, 507-08 (2014) (noting that, in applying Illinois law, the trial court found that the contract merged into the judgment and as the judgment made no provision for contractual interest, it could not award contractual interest).

¶ 21        In regard to attorney fees, section 1601 of the lease provides for Layko to recover attorney fees, costs, and expenses in certain situations. "Illinois follows the 'American Rule,' which provides that absent statutory authority or a contractual agreement, each party must bear its own attorney fees and costs." *Housing Authority of Champaign County v. Lyles*, 395 Ill. App. 3d 1036, 1038 (2009). Contract provisions allowing for recovery of attorney fees must be strictly construed. *Helland v. Helland*, 214 Ill. App. 3d 275, 277 (1991). "Illinois courts consistently refuse to broaden contractual provisions for attorney fees beyond the precise language used in the contract." *Seglin v. Old Orchard Hospital*, 192 Ill. App. 3d 176, 181 (1989). The words used in a lease "should be give their plain and generally accepted meaning." *Housing Authority of Champaign County*, 395 Ill. App. 3d at 1039. Where the terms of a lease are unambiguous they

9

must be enforced as written. *Id.* The court "will not *** 'torture ordinary words until they confess to ambiguity.' " *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 31 (2005).

¶ 22     Here, Layko argues that the language of section 1601 that provides for Layko to recover attorney fees, costs and expenses incurred in enforcing the lease allows for it to recover the attorney fees, costs, and expenses it incurred postjudgment while seeking to collect on the judgment. We disagree. Construing that provision strictly and giving the terms their plain meaning, as we must, it only entitles Layko to recover attorney fees, costs, and expenses incurred in enforcing the lease, not in collecting on the judgment. Once the judgment was final, Layko was no longer enforcing the lease but instead was seeking to collect on its judgment. The cases Layko relies upon are distinguishable based upon the contractual language at issue, which expressly allowed for attorney fees incurred in collecting amounts owed. For example, in *Centerpoint*, 743 F.3d at 508, the contractual language at issue—which the court determined was broad enough to allow for postjudgment fees incurred in collecting a judgment, including those incurred in an action for fraud and successor liability—stated that Centerpoint could recover all costs, expenses, and attorney fees incurred by it "to collect amounts due and owing." That language expressly allowed for the recovery of fees incurred for collection efforts, unlike the language here, which limits recovery to expenses incurred in enforcing the lease and does not mention collection. Additionally, the contract language in *Steiner Electric Co. v. Maniscalo*, 2016 IL App (1st) 132023, ¶ 88, likewise expressly included collection efforts, as the pertinent language in that matter allowed for recovery of "all reasonable costs of collection, including attorney fees." Based on the foregoing, we conclude Layko was not entitled to the recovery of

10

postjudgment attorney fees, costs, and expenses under the "enforcing the lease" clause in section 1601.

¶ 23 Section 1601 also allows Layko to recover attorney fees, costs, and expenses incurred "in any litigation to which [it] may be made a party." Layko argues that it was made a party to the underlying litigation because of defendants' actions. A plain reading of the language "may be made a party" indicates, due to its passive tone, that it contemplates that someone else made Layko a party, or, in other words, brought Layko into the litigation as a party, rather than Layko itself initiating the litigation. Therefore, because Layko itself initiated the litigation, its attempts to recover its attorney fees, costs, and expenses under that provision are unavailing.

¶ 24 In sum, the judgment, on its face, was satisfied with the payment of the judgment amount, along with statutory interest. Additionally, section 501 of the lease merged into the judgment and Layko was not entitled to contractual interest on the entire judgment or attorney fees, costs, and expenses under section 1601. Based on the foregoing, we conclude that the court did not abuse its discretion by entering full satisfaction and release of judgment based upon defendants' payment of the underlying judgment, along with statutory interest.

¶ 25                                     III. CONCLUSION

¶ 26 The judgment of the circuit court of Du Page County is affirmed.

¶ 27 Affirmed.